974 F.2d 1272
 1992 Copr.L.Dec. P 27,008, 24 U.S.P.Q.2d 1542
 Natalie HOWARD, Plaintiff-Counter-Defendant, Appellee-Cross-Appellant,
Custom Home Plans, Inc., Plaintiff-Appellee, Cross-Appellant,
v.
John STERCHI, Stonemill Log Homes, Inc.,
Defendants-Counter-Claimants, Appellants-Cross-Appellees,
Mattox Development Co., Inc., Defendant-Appellant, Cross-Appellee.
 No. 91-8328.
 United States Court of Appeals,
Eleventh Circuit.
 Oct. 14, 1992.
Rehearing Denied Jan. 14, 1993.
 
 T. Tucker Hobgood, Hobgood & Hobgood, Atlanta, Ga., for appellants.
 Frederick E. Link, Hartness, Link & Hardman, Gainesville, Ga., for appellees.
 Appeals from the United States District Court for the Northern District of Georgia.
 Before KRAVITCH and DUBINA, Circuit Judges, and RONEY, Senior Circuit Judge.
 RONEY, Senior Circuit Judge:
 
 
 1
 In this case plaintiffs sought damages and injunctive relief for copyright infringement, unfair trade practices, unfair competition, and breach of contract. Plaintiffs achieved partial success when the district court entered a judgment on the breach of contract claims for monetary damages and for injunctive relief, but other claims were denied. Plaintiffs appeal arguing that the district court erred in (1) holding there was no infringement by defendants of plaintiff's copyright for one of her plans, L-1080, (2) failing to compensate plaintiff on the theory of unjust enrichment, (3) calculating damages for breach of contract, (4) failing to reinstate a copyright on another plan, L-130, and (5) failing to award ownership of the copyrights of the various log home renderings to plaintiffs. Defendants cross-appeal asserting that the district court erred (1) in finding any party but Stonemill Log Homes liable for breach of contract or for injunction, (2) in amending the judgment to include an injunction, and (3) in awarding damages against them for breach of written contract.
 
 
 2
 We affirm the district court in all respects, except as to liability of any defendants other than Stonemill Log Homes, Inc. Affirming on the basis of the district court's well-reasoned opinion and its findings of fact which are not clearly erroneous, only three of the eight issues on this appeal necessitate discussion. These are the issues relating to copyright infringement on the appeal, and the issues on the cross-appeal concerning the liability of particular defendants and the injunction. We summarily affirm as to the other issues.
 
 
 3
 The recitation of facts is taken largely from the district court's opinion. See Howard v. Sterchi, No. 2:87-CV-108-WCO (N.D.Ga., August 14, 1990). Plaintiff Natalie Howard is a house designer primarily of country-style and log homes. She and her husband own and operate plaintiff corporation, Custom Home Plans, Inc. Custom publishes plan books containing both renderings (exterior appearances of house plans) and floor plans of Howard's designs, intended to promote the sale of the construction plans for the designs.
 
 
 4
 Defendant John Sterchi is the sole owner of defendant Stonemill Log Homes, Inc. (Stonemill). Defendant Mattox Development Co., Inc., is an investor with Stonemill in a joint venture known as Stonemill Log Homes. Defendants are in the business of marketing, manufacturing and erecting log homes. Each set of logs is cut to order, either customized to the buyer's plan, to blueprints provided by Stonemill or to construction plans purchased by the customer from some other source. Defendants market their log home kits primarily through direct mail and national magazine advertising. Prior to the association with plaintiffs, defendants included in much of their advertising information necessary for ordering the plan books from plaintiffs and references to plaintiffs' country plans as, e.g. "[o]ne of the best design and rustic floor plan and layout books available." Defendants intended the references to enhance sales of their own log home kits. Defendants bought construction plans from plaintiffs and bought multiple copies of the plan books, selling them or giving them away as part of their marketing strategy.
 
 
 5
 Sterchi approached Howard in late 1977 or 1978, suggesting a joint venture between the parties where plaintiffs' plans would be adapted to log construction and marketed with defendants' log kits. Defendants would continue to list plaintiffs as the source for log home plans and plaintiffs would list defendants as the exclusive supplier of log kits for Howard's log home designs. Plaintiffs were to bear the cost of printing the log books, and Howard agreed to redraw the construction plans for the use of logs for each plan chosen for the log plan book. The parties agreed upon the general terms of the joint venture and began executing the plan before entering into a written contract.
 
 
 6
 Howard and Sterchi met in October 1978, for Sterchi to pick up his first order of 100 plan books. The parties also met to execute the written contract, drafted by plaintiffs' counsel, which incorporated to some extent the terms of the parties' loose oral agreement. The contract primarily concerned Stonemill's subsequent use of Howard's materials. In the contract, Stonemill expressly agreed that Howard was the sole owner of her drawings and plans, regardless of whether they were protected by copyright, and that no one had the right to reproduce her creations without her consent. The contract contemplated Stonemill's use of Howard's designs and materials in its promotional literature, and Howard granted Stonemill permission to use all renderings, drawings and other materials produced by plaintiff. Stonemill agreed to use the work in a tasteful manner and to include an attribution in each publication using plaintiff's work, as follows, "Rendering and Floor Plans (describe material used) are reprinted courtesy of 'Country Plans by Natalie,' Custom Home Plans, Inc., Route One, Lake Burton, Tiger, Georgia 30576." Both Stonemill and Howard expected to benefit from Stonemill's use of Howard's materials in its promotions.
 
 
 7
 The contract expressly provided that permission was given to Stonemill alone and that Stonemill was not granted the right to transfer or assign the right to use Howard's materials. The contract did not restrict Howard's right to use her materials in any way, except that she agreed not to allow any other log building component manufacturer or sale endeavor to use her work in promotions. The contract also provided that Howard could terminate the agreement at any time upon written notice to Stonemill.
 
 
 8
 Howard apparently never sought to protect any of her plan books by copyright registration until after the publication of the 1978 edition of "Country Plans by Natalie." Consequently, the vast majority of Howard's designs were published free of copyright protection and entered the public domain. After beginning her association with Sterchi, Howard began to seek to protection of her work. Howard had an inexact understanding of copyright laws, however, and attached notices of copyright only to entire plan books, which generally included new plans and old plans already in the public domain, rather than attaching notices of copyright to each rendering or drawing of a floor plan.
 
 Copyright Infringement
 
 9
 The court assumed plaintiffs' copyright in a floor plan known as Plan L-1080, but held there was no infringement because defendants' plans were not substantially similar.
 
 
 10
 Plan L-1080, appearing in the 1981 copyrighted edition of the log plan book, was first published in the 1980 copyrighted edition of "Country Plans by Natalie" as the floor plan for the frame version identified as F-1080. Construction plans for the L-1080 were derived from similar construction plans for the F-1080, some of which had been published and distributed without notice of copyright protection. The construction plans for the log version required substantial changes and additional material from the frame version.
 
 
 11
 Plaintiffs presented evidence at trial of many of Stonemill's stock plans, which were introduced after the termination of the association between the parties. The district court stated that the comparison of the floor plans and construction plans marketed by Stonemill under the names of Kingston, Parkstone, Shannon, Oakmont and Oak Hills with the floor plans and construction plans of Howard's designs known as L-1080, L-130, L-13, L-1390 and L-1252, respectively, tended to show that Stonemill deliberately copied Howard's designs.
 
 
 12
 The court stated that it appeared that someone drew or directed the drawings of certain Stonemill plans while referring to plans of Howard's designs and that modifications introduced into the Stonemill plans were inadvertently not consistently integrated into each drawing of a particular plan. The court concluded, based on these errors, that Stonemill deliberately copied some of Howard's plans. The majority of Howard's designs, however, were in the public domain as a consequence of having been published without copyright protection.
 
 
 13
 Plaintiffs assert on appeal that the district court erred in holding that there was no infringement by defendants of plaintiffs' copyright for Plan L-1080. To support a claim for copyright infringement, plaintiffs must prove their ownership of the copyright to the works and copying by defendants. Plaintiffs must establish that defendants had access to the copyrighted work and that defendants' work is substantially similar to plaintiffs'. See Donald Frederick Evans & Associates, Inc. v. Continental Homes, Inc., 785 F.2d 897, 903-04 (11th Cir.1986).
 
 
 14
 The district court held that, although plaintiffs proved that defendants had access to Howard's designs, plaintiffs' copyright infringement claim concerning L-1080 must fail because Stonemill's Kingston plans were not substantially similar to plaintiffs'. In determining whether the plans are substantially similar, the court evaluated points of similarity and points of dissimilarity between the two plans. The court determined that the points of similarity between the two designs are as follows:
 
 1. overall layout and proportions
 2. two floors
 3. three bedrooms, two baths
 
 15
 4. master bedroom on right side of first floor
 
 
 16
 5. downstairs bathroom has tub; upstairs has shower
 
 6. kitchen in center rear
 
 17
 7. combined dining room and living room (parlor) on left side of first floor with fireplace at center of interior wall
 
 
 18
 8. stairs in center, facing main entry, master closet under stairs, linen closet to right of stairs on second level
 
 9. small deck at rear entry off of kitchen
 
 19
 10. nearly identical placement of windows.
 
 
 20
 The court determined that the points of dissimilarity are as follows:
 
 
 21
 1. dimensions of the rooms and the total area (1080 square feet of heated space versus 1212 square feet)
 
 2. roof lines
 
 22
 3. bay window at left rear of F-1080/L-1080 only
 
 
 23
 4. location of range, refrigerator, washer and dryer
 
 
 24
 5. open shelving in kitchen (F-1080/L-1080 only)
 
 
 25
 6. placement of commode and lavatory in first floor bath
 
 
 26
 7. door placement or orientation (right or left-handed opening) in first floor bath, coat closet, master bedroom and closets.
 
 
 27
 The court held that, although the floor plans are visually similar and the layout is generally the same, the dissimilarities are significant, particularly the roof lines, the bay window and the dimensions. The court noted that in country style frame houses and in houses built with logs which dictate that only square angles be used, similarities in the general layout of rooms can easily occur innocently. The variety of ways a two-story rectangle can be divided into three bedrooms, two baths, a kitchen, a great room or living room, closets, porches, etc., is finite. In architectural plans of this type, modest dissimilarities are more significant than they may be in other types of art works. Cf. Original Appalachian Artworks, Inc. v. Toy Loft, 684 F.2d 821, 830 (11th Cir.1982). The district court did not err in determining that the dissimilarities between F-1080/L-1080 and Stonemill's Kingston are significant. Plaintiffs have not cited authority for their assertion of error in the court's handling of this kind of copyrighted material, and have failed to establish by a preponderance of the evidence the substantial similarity of the plans required to show copyright infringement.
 
 Defendants Liable
 
 28
 Defendants urge that the trial court erred in holding all defendants liable on the contract and for the injunction. The written contract which formed the basis of Howard's action was between Natalie Howard and Stonemill Log Homes, Inc. Nevertheless, the trial court made no distinction and held all defendants liable for breach of contract and enjoined them all, although the injunction was based upon provisions in the contract. At argument upon Howard's Motion to Alter or Amend Judgment, both the court and Howard's counsel agreed that only the corporation should be liable. Apparently, the trial court simply omitted altering this part of the judgment. At oral argument before this Court, plaintiffs properly conceded that only Stonemill Log Homes, Inc., should be subjected to liability. The trial court's award, therefore, as to the other defendants is reversed.
 
 Injunction
 
 29
 Defendant Stonemill argues that the court's grant of an injunction is invalid because it is too vague. Stonemill contractually agreed to refrain from using plaintiffs' materials in the event that the contract was terminated. The contract states that Stonemill will recognize the validity of all Howard's creations whether copyrighted or not. Stonemill contractually limited its rights to copy plaintiffs' materials in exchange for certain desired benefits. See Universal Gym Equipment, Inc. v. ERWA Exercise Equipment, Ltd., 827 F.2d 1542, 1550 (D.C.Cir.1987) (contracting parties may limit their right to take action they previously had been free to take). Although enforcement of this contractual limitation would make Stonemill subject to limitations with respect to the pertinent portions of Howard's materials that are in the public domain, this contractual restriction is clearly stated in the contract and plaintiffs would not receive the benefit of their bargain if the restriction is not enforced. Cf. 1 Nimmer, The Law of Copyright, § 3.07[C] at fn. 81 (1990). The injunction follows the terms of the contract and is, therefore, presumptively valid. Stonemill has not come forth with authority or reasons overcoming this presumption. We, therefore, affirm the district court's determination as to the validity of the injunction.
 
 
 30
 The decree of the court enjoins Stonemill from using plaintiffs' materials. Stonemill is "restrained and enjoined from copying, reproducing, or in any way utilizing the plaintiffs' materials, plan books, designs, renderings or drawings, or otherwise violating the terms of paragraph 9 of the contract entered into by the parties on October 5, 1978." Stonemill argues that the terms "materials" and "utilizing" are not defined in the contract and that the decree as framed is not specific in its terms and does not describe in reasonable detail the acts sought to be restrained. See Fed.R.Civ.P. 65(d); Schmidt v. Lessard, 414 U.S. 473, 94 S.Ct. 713, 38 L.Ed.2d 661 (1974). The record does not reflect that Stonemill sought clarification or amendment of the terms of the injunction. To allow such action to be first brought in the district court, we dismiss the appeal without prejudice as to this one issue.
 
 Other Issues
 
 31
 The other issues on this appeal warrant only brief comment.
 
 
 32
 Unjust enrichment. Plaintiffs contend that the trial court erred in failing to compensate the plaintiffs on the theory of unjust enrichment for the unauthorized use of her work. Plaintiffs allege they suffered losses between the time the contract was terminated and the injunctive relief was ordered. The court held that Howard's notice of termination terminated the contract, even though the parties continued to deal with each other for another three years just as they had when the contract was in force. Howard, by deliberately taking the action specified by the contract as the means to terminate the contract, voluntarily renounced the benefits plaintiffs enjoyed under the contract. The evidence is clear that at the time of termination Howard was aware of Sterchi's offending conduct. If plaintiffs continued to provide benefits to the defendants, those benefits must be considered gratuitously rendered. Under the circumstances of this case, the district court's holding was not error.
 
 
 33
 Breach of contract and damages. By his own testimony, Sterchi breached the contractual provision requiring him to include an attribution in each ad or other printed use of drawings of Howard's designs. On cross-appeal, Stonemill urges that the trial court erred in awarding damages to plaintiffs. Under Georgia law, damages recoverable for breach of contract are such as arise naturally and according to the usual course of things from such breach and such as the parties contemplated, when the contract was made, as the probable result of its breach. Ga.Code Ann. § 13-6-2 (Michie 1982). In this action, plaintiffs lost sales of plan books, country features books and construction plans which would have resulted from the interest generated in her designs by their reproduction in defendants' national magazine ads and direct mail promotional materials. The district court correctly determined that plaintiffs are entitled to damages.
 
 
 34
 Plaintiffs contend that the district court made math errors in calculating damages for breach of contract. To assist the court in calculating damages, plaintiffs introduced evidence of the amount of money spent by plaintiffs in nationwide advertising and the rate of return they experienced. Plaintiffs' expert testified that the court could arrive at the amount of revenue plaintiffs lost by assuming that the response ratio plaintiffs experienced in connection with their own ads was equivalent to the response ratio they would have enjoyed from defendants' ads. Thus the equation solving for plaintiffs' lost revenue would be:
 
 Custom's revenue from log plan
 
 35
 books and spinoffs = x
 
 
 36
 ------------------------------ -----------------------------
 
 
 37
 amount Custom spent on ads amount Stonemill spent on ads
 
 
 38
 ----------
 
 
 39
 The court chose to use the figure for the amount Stonemill spent on ads as established by the invoices for the ads, rather than as a percentage of the figure given as expenses for advertising in Stonemill's financial records, because there was no evidence that all of the advertising expenditure shown in the financial statements went to print ads which included one of Howard's designs. Plaintiffs argue that the court gave Stonemill the benefit of its own inconsistency. The court's finding, though, is not clearly erroneous.
 
 
 40
 Plaintiffs also argue that the court mistakenly used the average cost figure for a single plan, rather than the average cost of a three set order, when calculating the value of lost sales. Plaintiffs admit that the terms "plans," "sets," and "orders" were used somewhat interchangeably at trial. We determine that the court's finding is not clearly erroneous.
 
 
 41
 Reinstatement of copyright. Plaintiffs challenge the district court's refusal to reinstate copyright to plan L-130, arguing that it was invalidated by a nonfinal summary judgment order based on factual error which was corrected at trial. Before trial, Howard submitted on affidavit 393 sets of this plan were sold, 224 with notice and 169 without notice. The court, determining that the number without notice was significant and that the plan was in the public domain, declared the copyright invalid by a summary judgment order. Howard later testified at trial that she had mistakenly submitted erroneous information by affidavit. We reject plaintiffs' allegation that the court abused its discretion in refusing to revise its order to conform to this evidence.
 
 
 42
 Ownership of copyright of renderings. Plaintiffs contend that the trial court erred when it refused to recognize plaintiffs' ownership of the copyright in the renderings. At the time of the inception of the log book, Howard did not have time to redraw her frame renderings in log form. Sterchi hired Bruce Matthews to do the drawings based on Howard's frame renderings. Matthews was paid by means of a credit against an upcoming purchase of a log home from Stonemill, and it was his understanding that the copyright ownership of the renderings would be in either Sterchi or Howard.
 
 
 43
 The trial court's holding that neither Howard nor Stonemill can claim copyright to renderings drawn by Matthews as works made for hire was not error. The copyright to the renderings vested initially in Matthews and was abandoned by him. Therefore, the renderings he drew entered the public domain.
 
 
 44
 AFFIRMED IN PART, REVERSED IN PART, AND DISMISSED IN PART WITHOUT PREJUDICE.