Rose Marie LAJOIE, an individual, Craft Engineers, Designers, Contractors, Inc., a Florida corporation, Plaintiffs,

v.

PAVCON, INC., d/b/a Kingon Custom Builders, a Florida corporation, Defendant.

Pavcon, Inc., d/b/a Kingon Custom Builders, a Florida corporation, Counterclaimant,

v.

Rose Marie LaJoie, an individual Craft Engineers, Designers, Contractors, Inc., a Florida corporation, Counterdefendants.

### No. 97–312CIVFTM–25D.

United States District Court,
M.D. Florida,
Fort Myers Division.

April 6, 2000.

Order denying motion to amend,
March 30, 2001.

Jennifer L. Whitelaw, Naples, FL, for Rose Marie Lajoie.

Jay Meisenberg, Fort Myers, FL, for plaintiff Craft Engineers, Designers, Contractors, Inc.

Frank R. Jakes, Tampa, FL, for Pavcon, Inc., d/b/a Kingon Custom Builders.

## ORDER

ADAMS, District Judge.

**THIS CAUSE** was tried to the Court on February 1, 2, 3 and 4, 1999. The parties submitted proposed findings of fact and conclusions of law prior to trial, and proposed findings of fact and conclusions of law after the conclusion of the trial (Dkts.106,120,124).

## I. STATEMENT OF PROCEEDINGS

Plaintiffs/ Counterdefendants filed this declaratory action seeking a judgment that they have not infringed Defendant/ Counterclaimant's "Grand Floridian" plans. (See Dkt.1, Exh.B). The Court previously denied Plaintiff LaJoie's Motion to Extend Time to File Memorandum (Dkt.40), filed along with a summary judgment motion on July 15, 1998, as said motion represented that the parties had

reached an apparent stipulation to extend the dispositive motion deadline to submit memoranda at a later date. As a result of this arrangement between the parties, Plaintiffs/ Counterdefendants LaJoie and Craft Engineers, Designers, Contractors, Inc., had filed motions for summary judgment with no supporting memoranda (*see* Dkts.39,43). Defendant/ Counterclaimant Pavcon, Inc. subsequently filed responses to the motions (Dkts.53,79), and has recently filed a supplemental response (Dkt.88). In light of the paucity of Plaintiff LaJoie's motion for summary judgment, the Court denied the motion. The Court also denied Plaintiff Craft's motion; thus, all issues remained for trial.

The Court having reviewed the evidence, the parties' respective Trial Briefs, Proposed Findings of Fact and Conclusions of Law, and being otherwise fully advised, hereby makes the following Findings of Fact and Conclusions of Law.

## II. FINDINGS OF FACT

### A. The Parties

Plaintiff Rose Marie LaJoie ("LaJoie") is an individual residing in Naples, Florida. Plaintiff Craft Engineers, Designers, Contractors, Inc. ("Craft") is a design, construction, and management company located in Ft. Myers Beach, Florida. During the relevant time frame, Craft consisted of two principals, Carlos Frizone ("Frizone") and Ricardo Andisco ("Andisco"). Craft designed and built the plans at issue in this action.

Defendant/Counterclaimant Pavcon, Inc., d/b/a Kingon Custom Builders ("Kingon"), located in Ft. Myers, Florida, is engaged in the business of designing, developing, constructing and selling custom residential dwellings in the State of Florida. Kingon was incorporated in 1982 and has continuously been engaged in the home building business.

### B. The Plans

The Grand Floridian is a copyrighted design for a single family luxury home and is owned by Kingon. In 1993, Kingon hired Steve Handley, an experienced designer, to serve as an in-house draftsman. With the assistance of Ann Kingon, Handley created the plans known as the Grand Floridian. (Defendant's Exhibits 3 & 4). On October 29, 1993, Kingon obtained a copyright registration for its Grand Floridian floor plans. After extensive dealings with LaJoie, Kingon developed a Modified Grand Floridian plan entitled the "Residence for Rose Marie LaJoie" during May through September of 1996. (Defendant's Exhibits 11, 13, 15). The design was prepared by Handley and consists of the general Grand Floridian floor plan with some revisions including a second floor game room. On June 5, 1997, Kingon was granted formal claims of copyright registration for the "Residence for Rose Marie LaJoie" or Modified Grand Floridian.

The Craft LaJoie Residence is a plan prepared by Craft during the months of July through September 1996. This plan is the subject of Kingon's copyright infringement counterclaim. (LaJoie Exhibit 6). Specifically, Kingon alleges that Craft and LaJoie copied the Grand Floridian and Modified Grand Floridian floor plans when they designed LaJoie's residence.

The Andover is a plan that was designed by Steve Handley in 1992 while he was employed by The Drawing Board, a company then owned by designer Len Capozzo. The Andover design was prepared for a client of The Drawing Board, Gulf Coast Homes, who completed the architectural drawings and has constructed several homes based on the Andover design. After the instant lawsuit was filed, The Drawing Board drafted a document purporting to assign its ownership of the Andover copyright to Kingon, and which also

purported to grant a license for the use of the Andover from Kingon to Gulf Coast Homes. Gulf Coast Homes did not sign the document, and they were not consulted about the license.

### C. Sequence of Events

In early 1994, LaJoie began looking at model homes and builders in order to build a new home. In March of 1994, she first met with representatives of Craft while visiting a model home that was recently constructed by Craft. (Trial Transcript (C. Jacobs), pg. 18, ln. 15–17). The model was referred to as the "Mediterranean" and was the home of Craft's president, Carlos Frizone. Construction of the Craft Mediterranean model was completed in February 1994. Upon viewing the home, LaJoie expressed to Carlos Frizone and Ricardo Andisco that it was the "house of her dreams." (Trial Transcript Vol. 3, pg. 6, ln. 14–19).

On July 15, 1994, with the assistance of Frizone, LaJoie purchased a lot in the Gulf Harbor subdivision. The contract price for her lot was $149,900. (Defendant's Exhibit 24). On September 7, 1994, La-Joie entered into a Contract with Craft for preliminary design, budgeting, final design, and construction management (Defendant's Exhibit 26). At the time, only certain builders were "preferred" or "approved" to build in the Gulf Harbor subdivision. Neither Frizone nor his partner, Ricardo Andisco, had a contractor's license, and Craft was not an approved builder in Gulf Harbor. This allowed Craft to build homes in the Gulf Harbor subdivision without the homeowner having to pay the 7% construction fee to the Gulf Harbor subdivision. (Trial Transcript C. Jacobs, RPT, pg. 41, ln. 21 through pg. 42, ln. 6 & pg. 70, ln. 8 through pg. 71, ln. 10). For this reason, several of the approved builders in the subdivision were hostile toward Craft.

At LaJoie's request and pursuant to the September contract, Craft prepared a set of architectural plans for LaJoie's home based on the "Mediterranean" courtyard design. LaJoie paid Craft $5,000 for its services with an agreement that an additional $5,000 would be paid at a later time. In addition, Craft gave LaJoie a price estimate of $450,000 to build the home. (Defendant's Exhibit 26). The plans were completed toward the end of 1994 and, in December 1994, Craft prepared a construction schedule for the LaJoie residence (Defendant's Exhibit 30). On December 2, 1994, Frizone wrote LaJoie telling her that Craft was ready to build her home. (Defendant's Exhibit 29).

In the beginning of 1995, Craft began working on construction drawings for La-Joie's home. According to LaJoie, she told Craft she did not plan on beginning construction until 1996. (Trial Transcript, Vol. 14, pg. 28, ln. 5 through pg. 29, ln. 4) However, Frizone and Andisco testified she never informed Craft of her deferred construction schedule. (Trial Transcript Vol. 3, pg. 7, ln. 8–16) & (C. Jacobs, Rpt. Transcript, pg. 27, ln. 19 through pg. 28, ln. 1). On February 6, 1995, LaJoie's attorney, Jennifer Whitelaw, contacted Craft regarding possible changes to the September 1994 Contract (Defendant's Exhibit 38). Frizone apparently ignored Whitelaw's request. Thereafter, Craft did not hear from LaJoie for over one year. (Trial Transcript Vol. 3, pg. 8, ln. 9–12).

In May, 1996, LaJoie began visiting each of the approved builders in the Gulf Harbor subdivision. LaJoie visited Kingon's Grand Harbor model center and met with Kingon's sales representative, Joyce Kingon. Joyce Kingon's notes of the meeting reflect that LaJoie either stated or gave the impression to Joyce Kingon that money was "no object" to LaJoie and she wanted a home like no other in the Gulf

Harbor subdivision (Defendant's Exhibit 22).[1] Thereafter Joyce Kingon showed LaJoie the Grand Floridian model in the Pelican Landing subdivision. When La-Joie first saw the Grand Floridian home, she expressed her excitement about the model.[2] She began bringing her friends and relatives on tours of the Grand Floridian model to show her friends "what she was going to do." (Trial Transcript, Vol. 4, pg. 79, ln. 1–7).

Within two weeks after her first visit to the Grand Floridian, Joyce Kingon scheduled a meeting between LaJoie and Kingon draftsman Steve Handley so that La-Joie could discuss modifications to the Grand Floridian, including the addition of a second story (Defendants Exhibits 22 & 23). After numerous meetings with Joyce Kingon and Steve Handley, Kingon prepared a design resulting in the Modified Grand Floridian, which includes a second floor game room with a balcony over looking the living room. LaJoie did not explicitly mention to Joyce Kingon and Steve Handley that she was under contract to build with Craft; however, LaJoie testified that a Craft sign was visible on her lot in Gulf Harbor.

In approximately July, 1996, LaJoie met with the representatives of Craft and indicated that she no longer wanted the "Mediterranean" design, and instead desired a house of "a conventional type."[3] (Trial Transcript Vol. 3, pg. 8, ln. 24–pg. 9, ln.

10). During the months of July and August, Craft began working on a new set of plans for LaJoie. At their meetings, La-Joie often submitted to Craft her copies of the plans in various stages with her notes and revisions thereon. LaJoie described to Frizone how she wanted the placement of closets, doors, and other elements in the design.

Later, in September 1996, LaJoie informed Craft that her attorney advised her to obtain a "non-infringement opinion." When Craft asked why, LaJoie indicated that she had some concerns about Kingon's Grand Floridian plan.[4] Shortly thereafter, Frizone responded to Whitelaw's request, apparently not realizing what she meant by "non-infringement opinion." Frizone's letter essentially set out the differences between the Grand Floridian and the Craft LaJoie home. Frizone's letter stated that "the floor plan layout is similar to the Grand Floridian" but "we made many changes in the overall look of the house." (Defendant's Exhibit 41). After Whitelaw received the letter, she wrote Frizone and requested a legal opinion from Craft's counsel as to non-infringement with respect to the Grand Floridian or any other plan used to create the plans for the Craft LaJoie residence. (Defendant's Exhibit 42). In either September or October 1996, pursuant to Whitelaw's instructions, representatives of Craft met with attorney Bill Noonan.

---

**1.** In her testimony, Joyce Kingon referred to her handwritten notes of the meeting. However, Kingon's notes do not appear to be entirely contemporaneous, as said notes contain various interpolations in the text and in the margins in different handwriting.

**2.** All parties agree that the design of the Grand Floridian significantly differs from the original Craft Mediterranean design.

**3.** Although Frizone and Andisco both denied that LaJoie told them she had been looking at other builders, LaJoie testified that she told

them about the Grand Floridian and that she had seen the Grand Floridian. Andisco stated that he eventually obtained a copy of the Grand Floridian brochure from Professional Realty Consultants, with whom Craft shared office space. (Trial Transcript Vol. 3, pg. 13, ln. 9–11).

**4.** Around this same time, Craft presented La-Joic with a new design/build agreement, which expressly superseded the terms of the previous contract between the parties. (Defendant's Exhibit 40).

During this period of time, LaJoie continued her dealings with Kingon on the modified Grand Floridian. In September, 1996, Kingon submitted a revised price proposal to LaJoie indicating a total price of $679,932 for the Modified Grand Floridian design. (Defendant's Exhibits 14 & 11). After delivering the Modified Grand Floridian plans and the September 13, 1996 price proposal to LaJoie, Joyce Kingon did not hear from LaJoie for some time. LaJoie contacted Joyce Kingon during the 1996 holiday season and informed her that she intended to use Craft as her builder. (Trial Transcript, Vol. 4, pg. 88).

Ultimately, LaJoie signed a contract with Craft in January 1997. (Defendant's Exhibit 67). Craft began construction of the LaJoie home in April 1997, and the home was completed in March 1998.

### III. CONCLUSIONS OF LAW

At the core of this case is Kingon's claim of copyright infringement. It has been long recognized that "[a]rchitectural plans are subject to Federal Copyright Protection." *Arthur Rutenberg Homes, Inc. v. Maloney,* 891 F.Supp. 1560 (M.D.Fla. 1995); *see also Arthur Rutenberg Corp. v. Dawney,* 647 F.Supp. 1214, 1215 (M.D.Fla. 1986). Accordingly, "if copyrighted architectural drawings of the originator of such plans are imitated or transcribed in whole or in part, infringement occurs." *Imperial Homes Corp.,* 458 F.2d at 899. For copyright infringement purposes, it does not matter that the infringer copied from a depiction of the copyrighted floor plan rather than the technical blueprint drawings filed with the Copyright Office. *Donald Frederick Evans and Associates, Inc.,* 785 F.2d at 904.

The level of originality required for copyright protection is not especially elevated. *Feist Publications, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 345, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991). To be original, a work must be independently created and must have some minimal degree of creativity. *See Mid America Title Co. v. Kirk,* 59 F.3d 719, 721 (7th Cir.1995) In addition, the underlying component parts of a creation are not subject to protection, but a creator's independent selection and arrangement of component parts into an original design is copyrightable. *See M. Kramer Mfg. Co. v. Andrews,* 783 F.2d 421, 439 (4th Cir.1986).

Plaintiffs initiated this action by filing their complaint for Declaratory Judgment. To prevail on their action, Plaintiffs bear the burden of proving that Kingon's copyrights are invalid, or that the Craft LaJoie plans do not infringe the Grand Floridian plans. *See Donald Frederick Evans and Associates, Inc. v. Continental Homes, Inc.,* 785 F.2d 897, 903 (11th Cir.1986).

### A. Validity of Kingon's Copyright in the Grand Floridian

Kingon's Certificates of Copyright Registration raise a presumption of validity of the copyrights in Kingon's architectural drawings. 17 U.S.C. § 410(c); *see Continental Homes, Inc.,* 785 F.2d at 903. If Kingon unlawfully used preexisting copyrighted work to prepare the Grand Floridian, however, Kingon is not entitled to copyright protection. *See* 17 U.S.C. § 103. LaJoie contends that Kingon's Grand Floridian copyright is invalid because Kingon allegedly copied from another set of plans, the Andover, when it created the Grand Floridian.

LaJoie maintains that Gulf Coast Homes rightfully owns the copyright to the Andover. LaJoie asserts that the Grand Floridian was copied from the Andover because Kingon's draftsperson, Steve Handley, admitted that he viewed the Andover around the same time that he prepared the Grand Floridian plan. Kingon argues that the copyright in the Andover design belongs to The Drawing

Board, and thus The Drawing Board's subsequent assignment to Kingon precludes any finding of infringement.

During the trial, Handley testified that while he was with The Drawing Board, he did the preliminary design work on the Andover. (Trial Transcript, Vol. 2, pg. 144). He described the preliminary design work as the footprint of the house, the overall room sizes, the front elevation and the preliminary design, in contrast to the actual detailed "architectural drawings" which, based on the exhibits presented at trial, were apparently prepared by Gulf Coast Homes.

In an effort to establish that the design was prepared by a Gulf Coast employee and belonged to Gulf Coast as a work for hire,[5] LaJoie called two Gulf Coast employees, Randy Ford and Mark Harden, neither of whom could confirm that Gulf Coast created the Andover. Annette Nilles, the Gulf Coast employee whom Ford speculated could have created the Andover, herself testified that she believed that the Andover design originated with The Drawing Board. Nevertheless, the Court was unpersuaded by Kingon's witness, Len Capozzo of the Drawing Board, who asserted that he owned the copyright to the design. Capozzo could not produce the actual design plans submitted to the copyright office, and casually opined that they were destroyed in a household accident.

The Court concludes that the issue of the Andover is not dispositive of whether Kingon owns a valid copyright, as LaJoie

did not show that Handley copied the Andover design in creating the Grand Floridian plans. Throughout the trial, the parties referred to the artist rendering of the Andover from a brochure. During Ford's testimony, however, LaJoie moved to admit as evidence the detailed architectural drawings for the Andover. The evidence was at best inconclusive as to what part of the Andover design is copyrighted material, and who owns the alleged copyright. *See* 17 U.S.C. § 101 (defining an architectural work as "the design of a building ... embodied in any tangible medium of expression, including a building, architectural plans, or drawings ..."). The Court therefore rejects Plaintiffs' claim that the Grand Floridian and or Modified Grand Floridian were copied in whole or in part from the Andover.[6]

## B. Whether the Craft LaJoie Residence Infringes the Grand Floridian

A *prima facie* case of copyright infringement occurs if a preponderance of the evidence establishes the following: (1) ownership of a valid copyright to the work in question, and (2) copying by the defendant. *See Continental Homes, Inc.*, 785 F.2d at 903.

### 1. Ownership and Validity

As stated above, Kingon has shown ownership of a valid copyright in the Grand Floridian.

### 2. Copying

Since a copyright holder is generally not privy to acts of copying by the infringers,

---

**5.** Under the Copyright Act, the author of a work is the initial owner of the copyright for that work. 17 U.S.C. § 201(a). When a work is "made for hire," the employer, rather than the employee, is deemed the author. 17 U.S.C. § 201(b). Any work prepared by an employee within the scope of his or her employment qualifies as a work for hire. The employer is the author of that work and thus the owner of the copyright. *See Community*

*for Creative Non–Violence v. Reid,* 490 U.S. 730, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989).

**6.** The Court therefore need not reach the issue of the validity of the assignment from the Drawing Board to Kingon, which occurred after the alleged infringement and did not purport to confirm any prior agreement. *See Imperial Residential Design, Inc. v. The Palms Dev. Group, Inc.,* 70 F.3d 96 (11th Cir.1995).

it is rarely possible to prove copying directly. Accordingly, copying may be established by showing that: (1) the defendant had access to the work, and (2) the defendant's work is substantially similar to the plaintiff's work. *See Original Appalachian Artworks, Inc. v. Toy Loft, Inc.*, 684 F.2d 821, 829 (11th Cir.1982).

### i. Access

A demonstration of access does not require proof of actual viewing. "Access" under the Copyright Act means merely "an opportunity to view the protected material." *Maloney*, 891 F.Supp. at 1567 (citing *Robert R. Jones Assocs. v. Nino Homes*, 858 F.2d 274, 277 (6th Cir. 1988)). In this case, LaJoie and Craft both admitted to having access to the Grand Floridian. LaJoie testified that during her initial visit to the Kingon model, she obtained a Kingon brochure which contained a rendering of the Grand Floridian design. LaJoie visited the Grand Floridian model on numerous occasions and, from the Spring of 1996 through the Fall, LaJoie had extensive dealings with representatives of Kingon during which time she received price quotes and copies of the plans.

As for Craft, LaJoie testified that when she met with Frizone and Andisco in July of 1996, she told them about the Grand Floridian by Kingon. At this time, Craft shared office space with Professional Realty Consultants, who maintained copies of all Gulf Harbor builders' plans in its office, including the Grand Floridian plans. Craft admits ultimately obtaining a copy of the Kingon Grand Floridian brochure from Professional Realty Consultants.

### ii. Substantial Similarity

To demonstrate substantial similarity, a plaintiff need not prove identical and slavish copying. *See Maloney*, 891 F.Supp. at 1567. Rather, if comparing the infringing work and copyrighted work side by side, "an average lay observer would recognize the infringing work as having been appropriated from the copyrighted work," substantial similarity exists. *Id.* (citing *Original Appalachian Artworks*, 684 F.2d at 829). In evaluating substantial similarity, the Court may assess the presence of differences between the two works. *See Howard v. Sterchi*, 974 F.2d 1272, 1276 (11th Cir.1992). Whether differences negate infringement depends upon whether the differences "so outweigh similarities that the similarities can only be deemed inconsequential within the total context of the copyrighted work." *Maloney*, 891 F.Supp. at 1568 (citing *CSM Investors, Inc. v. Everest Dev., Ltd.*, 840 F.Supp. 1304, 1312 (D.Minn.1994)).

In this case, the floor plans of the Modified Grand Floridian and the Craft LaJoie residence are strikingly similar. Kingon's expert, architect Andrew Dohmen, testified that based on his review of a previous version of the Craft LaJoie residence, it appeared that the layout was copied from the Grand Floridian. Dohmen extensively compared the floor plan of the LaJoie residence with the floor plans of the Grand Floridian and Modified Grand Floridian, noting where he believed the LaJoie plans were altered to avoid similarity. For example, Dohmen noted that many of the walls and doors were changed from 45 degree angles to 90 degree angles. Dohmen used transparencies to overlay one floor plan onto the other, revealing similar lines and spacing throughout most of the two plans. He concluded that the Craft LaJoie residence lacked "finesse," and therefore must have been a copy of the Modified Grand Floridian.

Dohmen did not testify, however, as to the differences between the elevations or exterior and other features of the two homes, and in fact he had not reviewed them prior to trial. Upon the Court's review of the drawings and photos of the

elevations of the Craft LaJoie residence and the Grand Floridian and Modified Grand Floridian,[7] there are more than a few differences. It was revealed during trial that the total LaJoie residence is larger than the Modified Grand Floridian by over 1000 square feet. The Craft LaJoie residence has a European appearance with different roof lines, a different pool area and veranda, and a portico or covered area extending from the house to the cabana. In fact, the two homes, in totality, appear to be completely different residences. The Court finds that the differences in the elevations and sizes of the homes are significant, and constitute more than just superficial changes made in an attempt to disguise similarities. *Compare Maloney,* 891 F.Supp. at 1567.

As to the similarity in the floor plans, Craft submitted an exhibit showing the floor plans of at least six other homes (including the Andover and Andover II), all featuring a similar "split-plan" arrangement of living room, bedrooms, kitchen, pool and veranda. (*See* Craft Exhs. 6 and 6–A). In creating a split-plan, it appears that there are a finite numbers of ways that the rooms can be arranged. *See Howard,* 974 F.2d at 1275. Even Kingon's expert, Dohmen, admitted on cross-examination that the Andover and the Grand Floridian floor plans shared many similarities. The Court notes, however, that only the Craft LaJoie residence and the Modified Grand Floridian plans share a second story.

Nevertheless, in reviewing the totality of similarities and differences, it appears that the Craft LaJoie residence is not substantially similar to the Grand Floridian and Modified Grand Floridian plans. *See Howard,* 974 F.2d at 1275–1276. The

Court thus finds that the LaJoie residence does not infringe the Grand Floridian and Modified Grand Floridian plans.

Accordingly, it is **ORDERED:**

1. The Clerk is directed to enter judgment in favor of Plaintiffs/ Counterdefendants, Rose Marie LaJoie and Craft Engineers, Designers, Contractors, Inc;

2. Kingon's Motion for Sanctions (Dkt.125) is **DENIED.**

### ORDER

**THIS MATTER** is before the Court on Plaintiffs, Craft Engineers, Designers, Contractors, Inc. and Carlos Frizone's Motion to Amend Final Judgment (Dkt.137) and Defendant/Counter-claimant, Pavcon Inc.'s Motion Pursuant to Fed.R.Civ. P.50(c) and 59(a)(2) & (e) to alter or Amend the Judgment or, in the alternative, for a New Trial (Dkt.139). Upon consideration, it is

**ORDERED:**

1. Pavcon, d/b/a Kingon Custom Builders' Motion Pursuant to Fed.R.Civ.P.50(c) and 59(a)(2) & (e) to alter or Amend the Judgment or, in the alternative, for a New Trial (Dkt.139) is **DENIED.** Regardless of the use of the word "strikingly" in the Order of April 6, 2000, describing similarities in the homes in questions, the Court concluded that the homes were not substantially similar, and did not infringe. The Court continues to find the homes are not substantially similar.

2. The Motion to Amend Final Judgment to award attorney's fees (Dkt.137) is **DENIED.** The Court agrees that the award of attorney fees in a copyright infringement case is discretionary. *Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 534, 114

---

7. The Court compared the plans and drawings of the Craft LaJoie residence to the Modified Grand Floridian, whenever possible. Because there are not photos of a constructed Modified Grand Floridian, the Court compared the photos of the Craft LaJoie residence with the original Grand Floridian.

S.Ct. 1023, 1033, 127 L.Ed.2d 455 (1994). The Court also agrees that motivation along with frivolousness, "objective unreasonableness and the need in particular circumstances to advance considerations of compensation and deterrence" are factors to consider in determining an award of attorney's fees. *Id.* at 534, *citing Lieb v. Topstone Industries, Inc.,* 788 F.2d 151, 156 (1986). However, in the instant case, the issues were clearly non-frivolous and the facts do not show an improper motive by either party in bringing this action or in vigorously litigating this matter. Essentially, this litigation was instituted by Lajoie and Craft. Pavcon has done no more than vigorously attempted to protect what it considered its copyright.