**JOHN ALDEN HOMES, INC., Plaintiff,**

v.

**Ken KANGAS, Joanne Kangas, Garry Muth, Defendants.**

**No. 2:99–CV–396–FTM–DNF.**

United States District Court, M.D. Florida, Fort Myers Division.

April 27, 2001.

---

John Pope Harllee, III, Harllee, Porges, Hamlin, Knowles, Bald & Prouty, P.A., Bradenton, FL, R. Eric Gaum, Law Office of R. Eric Gaum, Akron, OH, Jon Douglas Parrish, Parrish & Moore, Naples, FL, for John Alden Homes Inc, plaintiff.

Merrill Nels Johnson, Merrill N. Johnson, Naples, FL, for Ken Kangas, defendant.

Merrill Nels Johnson, (See above), for Joanne Kangas, defendant.

Jennifer L. Whitelaw, Law Office of Jennifer L. Whitelaw, Naples, FL, Gary Muth, Fort Myers, FL, defendant pro se.

## *OPINION*

FRAZIER, United States Magistrate Judge.

This Cause is before the Court on the Amended Complaint (Doc. 54) of John Alden Homes, Inc. ("John Alden Homes") alleging violations of the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.* by Defendants. The Defendant Gary Muth ("Muth") filed an Answer (Doc. 56) denying the allegations of infringement and asserted various affirmative defenses. The Defendants Ken Kangas and Joanne Kangas (the "Kangases") filed an Answer (Doc. 61) also denying the allegations of infringement. On February 14, 2000, the parties consented to proceed before a United States Magistrate Judge for all proceedings. The Court conducted a bench trial on December 20, and 21, 2000 and heard closing argument on December 22, 2000. The parties submitted their proposed findings of fact and conclusions of

law on February 12, 2001 and March 12, 2001. The Court now issues its findings of fact and conclusions of law.

## I. JURISDICTION AND VENUE

Pursuant to 28 U.S.C. § 1338(a), district courts have "original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks." An action may not be instituted in district court on a particular copyright "until registration of the copyright claim has been made in accordance with this Title [17 U.S.C. § 110, *et seq.*]." 17 U.S.C. § 411(a) The copyright registration is a jurisdictional prerequisite. *Brewer–Giorgio v. Producers Video, Inc.,* 216 F.3d 1281, 1285–86 (11th Cir.2000). In the instant case, the Plaintiff obtained a Certificate of Registration (Pl.Exh.1) from the Copyright Office effective on June 25, 1999, on the Key Largo model, and therefore the jurisdictional requirement was satisfied to file suit. A copyright registration extends to support an action for infringement of an unregistered copyright in a derivative work. *Montgomery v. Noga,* 168 F.3d 1282, 1291–1292 (11th Cir.1999)[1]

Venue is proper in the Fort Myers Division of the Middle District of Florida because the evidence establishes all Defendants reside or may be found in Lee County, Florida and Collier County, Florida. 28 U.S.C. § 1400(a); Rule 1.02(b)(5), Local Rules for the United States District Court for the Middle District of Florida.

## II. FACTS

John Alden Homes, Inc. alleges as follows: 1) Ken Kangas traced the Key Largo floor plan; 2) he provided a copy of his tracing to Gary Muth; 3) Muth drew the Crown floor plan from Ken Kangas' tracing; and 4) the Kangases built their home which is substantially similar to the Key Largo floor plan. The Kangases, however, deny that they traced the Key Largo floor plan. Muth asserts that the Crown floor plan is based on the Envoy 3 floor plan which he created prior to the Key Largo floor plan being created, and further Muth denies that the Crown floor plan or the Kangases' home is substantially similar to the Key Largo floor plan.

### A. EVENTS

Lynn Daugherty ("Daugherty"), president of John Alden Homes, Inc. created the Key Largo floor plan. (tr.[2] p. 68, 76, Pl.Exh. 1) Daugherty created it for John Alden Homes of Naples, Inc. which is now known as John Alden Homes, Inc. (tr. p. 83) When the copyright was registered on June 25, 1999, the name of the corporation was John Alden Homes, Inc. (tr. p. 84) Daugherty has a registered builder's license from Collier County which he uses to qualify Grove's Edge Building Company. (tr. p. 196–197)

The Kangases purchased Lot 48 in Lely Resort. (tr. p. 344) The Kangases visited a John Alden Homes model at Lely Resort on March 26, 1997, and completed a registration card. (tr. p. 88, Pl.Exh.13) On May 15, 1997, Carol Purdum from John Alden Homes sent the Kangases a follow up letter which contained drawings of John Alden Homes' models including a drawing of the Key Largo model. (Tr. p. 89–90, Pl. Exh.5) The attachments to this letter

---

**1.** The Defendants argue that a certain Key Largo floor plan that was sent by fax to the Kangases (See, Pl.Exh.5) was not copyrighted. However, it is undisputed that the Key Largo model was copyrighted in 1999, and that the fax could be considered a derivative work.

**2.** "Tr." refers to the transcripts of the trial. (Doc. 107, 108)

showed how certain John Alden Homes' models including the Key Largo would fit onto Lot 17. (Pl.Ex.5) However, the Kangases owned Lot 48, not Lot 17. (tr. p. 344)

Mr. Kangas claims that he went to another builder, U.S. Homes, and was shown a model that he liked named the Cedar Ridge but was not able to have this model built on his property due to the odd shape of his lot. (tr. p. 345, D.Exh.5) The Kangases visited many builders and looked at many houses. (tr. p. 347) Mr. Kangas returned to his northern residence and claims to have begun a free-hand drawing on a yellow sheet of paper of the layout of the home that he and his wife wanted. (tr. 344, 347–350) Mr. Kangas claims that his drawing was based on a different model home named the Essex by Stonebridge. (tr. p. 348–350) Daugherty claims that he never saw the yellow sheet of paper prior to the commencement of this litigation, whereas Mr. Kangas claims to have shown the yellow sheet of paper to Mr. Daugherty in early January 1998. (tr. p. 111, 353) Garry Muth admitted to receiving a photocopy of the yellow sheet of paper from the Lely Resort realtor Linda Dorbad just prior to Christmas of 1997. (tr. p. 334)

Late in 1997 or possibly in early 1998, Ken Kangas met with Lynn Daugherty. (tr. p. 91, 94) Mr. Kangas expressed an interest in building the Key Largo model on his lot, but with some changes to the design. (tr. p. 91) The changes included having the second and third bedroom moved, having the garage reoriented, and moving the front bathroom. (tr. p. 91–92) Daugherty took a Key Largo floor plan, and using a red pen, he modified the Key Largo floor plan to incorporate these changes. (tr. p. 92–93, Pl.Exh.14) On January 15, 1998, Daugherty prepared and

thereafter delivered a 1/4″ scale drawing of the revisions to the Key Largo model to the Kangases. (tr. p. 96, Pl.Exh.46)

On January 24, 1998, John Alden Homes and Ken Kangas entered into a Design Agreement. (Pl.Exh.7) The Design Agreement provided that John Alden Homes would provide Mr. Kangas with Plans for a proposed home to be built on Lot 48. (Pl.Exh.7) The Design Agreement stated that Mr. Kangas had paid $1200 for these plans, but the money was never paid. (Pl.Exh.7, tr. p. 101) Paragraph 4 of the Design Agreement provided the following: "The Plans developed by the Builder on behalf of the Purchaser shall be owned by and copyrighted in the name of John Alden Homes of Naples, Inc. & Ken Kangas." (Pl.Exh.7) No plans were ever supplied to the Kangases pursuant to this Design Agreement. (tr. p. 101) In fact, none of the plans that were provided to the Kangases from John Alden Homes would actually fit on Lot 48 without some modifications. (tr. p. 357) [3]

On February 6, 1998, Daugherty sent Ken Kangas by fax a copy of the revised Key Largo drawing. (Pl.Exh.8, tr. p. 108) The revised drawing places the second and third bedrooms in the front of the house and moves the second bath behind the second bedroom. (Pl.Exh.8)

Garry Muth drew the floor plans for the Crown model home which are the plans that were used to build the Kangases' home. (tr. p. 313–314) It took him approximately 4½ months to draw all six pages. (tr. p. 321, Pl.Ex.2) He received a design fee of $6,750. (tr. p. 320) Muth testified that the Crown model was a derivative of the Envoy 3 model which was designed by Muth and Oram H. Tonge for Kenneth

---

3. The Court will make no determination as to the validity of the Design Agreement in that the Kangases did not pay any money to John Alden Homes under the Agreement and John Alden Homes did not prepare any plans pursuant to the Agreement.

Preston Homes of Distinction. (tr. p. 316, Pl.Exh.18) Muth testified that he used the Envoy 3 plans and the Kangases' yellow sheet of paper to design the Crown model. (tr. p. 316, Pl.Exh.18) The Kangases hired Kenneth Preston Homes of Distinction to build the Crown model. (tr. p. 49–50, 358) Kenneth Preston Homes of Distinction abandoned the job, and Mr. Kangas became qualified as a builder and finished the job. (tr. p. 55–56) The Kangases built their home in Naples, Florida from the Crown floor plan with some modifications but no structural changes. (tr. p. 25, 322, Pl.Exh.2)

On November 7, 2000, John Alden Homes registered a copyright for a derivative drawing of the Key Largo model which incorporates the requested changes of the Kangases. (Pl.Exh. 15, 16; tr. p. 102) John Alden Homes registered both the technical drawings and the architectural drawings of this derivative work. (Pl. Exh.15, 16)

## B. DISCOVERY OF ALLEGED INFRINGEMENT

Daugherty obtained a copy of the house plans that the Kangases used to build their house. (tr. p. 111) He obtained these plans by going to the home site, taking the plans, going to a copy company and copying the plans, then returning them to the job site. (tr. p. 112) Daugherty gave these copies to his attorney for this litigation. (tr. p. 112) However, when Daugherty was deposed in November of 2000, he testified that he obtained a copy of the Kangases plans from the Collier County Building Department, but later changed his testimony at the deposition to reflect that he took the plans from the Kangases home site. (tr. p. 113)[4]

In January 1999, the realtor Linda Dorbad informed the Kangases that there might be a copyright problem with the building of their home. (tr. p. 47) In addition, Muth told the Kangases that Daugherty appeared on the job site of the home and told him that he was going to enforce his copyright. (tr. p. 317) Muth discussed this conversation with Mr. Kangas. (tr. p. 317) A letter dated May 4, 1999, was received by the Kangases from attorney J. Christopher Lombardo. (tr. p. 46) This letter informed the Kangases that there was a potential copyright problem with the building of their home. (tr. p. 46, Pl. Exh.10)

## C. CORPORATE NAME

The history of the Plaintiff's corporate name is somewhat confusing. Apparently, the first corporation formed in 1996 was John Alden Home Crafter, Inc. which was not the name that Daugherty wanted. (tr. p. 73) He told his attorney to liquidate John Alden Home Crafters and form a new corporation named John Alden Homes, Inc. (tr. p. 73) However, instead of forming a new corporation, Daugherty's attorney simply changed the name of John Alden Home Crafters, Inc. to John Alden Homes, Inc. (tr. p. 73) This corporation was never active. (tr. p. 74) Daugherty then instructed his attorney to liquidate John Alden Homes, Inc. and form a new company of John Alden Homes, Inc. that had no ties to any of these previous corporations (tr. p. 73) Once again, the attorney did not follow Daugherty's instructions and formed the corporation John Alden Homes of Naples, Inc. in early 1997 (tr. p. 74) Daugherty changed the name of this corporation from John Alden Homes of Na-

---

**4.** The Court will not address the legality of Daugherty's actions in removing the plans

from the Kangases' home site.

ples, Inc. to John Alden Homes, Inc., the Plaintiff in this action. (tr. p. 72–3)

## III. COPYRIGHT LAW

Copyright protection subsists in original works of authorship which are fixed in any tangible medium of expression and include architectural works. 17 U.S.C. § 102(a) An "architectural work" is defined as a work which is the design of a building which is embodied in any tangible medium of expression including the architectural plans or drawings for a building. 17 U.S.C. § 101 "The work includes the overall form as well as the arrangement and composition of spaces and elements in the design, but does not include individual standard features." *Id.* The Eleventh Circuit has consistently held that original floor plans and construction drawings for single family houses can be protected under the copyright laws. *Imperial Residential Design, Inc. v. Palms. Dev. Group, Inc.*, 70 F.3d 96 (11th Cir.1995); *Arthur Rutenberg Homes Inc. v. Drew Homes, Inc.* 29 F.3d 1529 (11th Cir.1994); *Howard v. Sterchi*, 974 F.2d 1272 (11th Cir.1992)

### A. OWNERSHIP OF COPYRIGHT

The owner of a copyright has the exclusive right or can authorize someone else to reproduce the copyrighted work or to prepare derivative works based upon the copyrighted work. 17 U.S.C. § 106(2) Further, an owner of a copyright that is registered may institute an action for a copyright claim. 17 U.S.C. § 411(a) To establish copyright infringement, two elements must be proven: ownership of a valid copyright, and unauthorized copying of the work. *Donald Frederick Evans and Associates, Inc. v. Continental Homes,* Inc., 785 F.2d 897, 903 (11th Cir. 1986), *Beal v. Paramount Pictures Corporation,* 20 F.3d 454, 459 (11th Cir.1994) Certificates of a copyright registration

constitute *prima facie* evidence that a plaintiff owns a valid copyright. *Donald Frederick Evans,* 785 F.2d at 903, citing 17 U.S.C. § 410(c) The burden then shifts to the defendants to rebut this presumption of validity. *Donald Frederick Evans,* 785 F.2d at 903.

In the instant case, it is undisputed that Lynn Daugherty created the Key Largo architectural work. Further, it is undisputed that John Alden Homes, Inc. registered the copyright for the Key Largo model, and received a Certificate of Registration VA 720–962, effective as of June 25, 1999. (Pl.Exh.1) The Certificate of Registration VA 720–962 establishes a *prima facie* case that John Alden Homes, Inc. owned a valid copyright of the Key Largo model. It is also undisputed that Daugherty created derivative works of the Key Largo model for John Alden Homes. These derivative works included promotional materials and also a derivative work that placed the second and third bedrooms in the front of the house. This latter derivative work was registered with the Copyright Office as well. (Pl.Exh.15, 16)

Defendant Muth argues that Daugherty created the Key Largo plans for the corporation which was John Alden Home Crafter, Inc. which later changed its name to John Alden Homes, Inc. which is now a dissolved corporation. Muth asserts that the first John Alden Homes, Inc. did not transfer the copyright to John Alden Homes of Naples, Inc. which later changed its name to John Alden Homes, Inc. as well. Although the corporate history is quite confusing, Daugherty testified that he created the Key Largo plan for John Alden Homes of Naples, Inc. which later changed its name to John Alden Homes, Inc. and is the Plaintiff in this action. The Court finds that the second corporation named John Alden Homes, Inc., the Plain-

tiff in this action, is the valid owner of the Key Largo copyright and has standing to sue for infringement of that copyright.

## B. COPYING

, The next prong of a copyright infringement action requires proof of copying. Evidence of direct copying is difficult to obtain, therefore court have developed a two part test for indirect proof of copying. *Beal v. Paramount Pictures Corporation,* 20 F.3d at 459. A plaintiff must show that the defendant had access to the plaintiff's work and that the defendant's work is substantially similar to the plaintiff's copyrighted expression. *Id.*

■ In this case, the Plaintiff claims that the yellow sheet of paper that Ken Kangas drew clearly shows that he traced the Key Largo model, and then his giving a copy of this yellow sheet to Muth gave Muth access to the copyrighted expression which he used to create the Crown plan. It is undisputed that Mr. Kangas had access to the promotional material showing a derivative of the Key Largo model which was faxed to him by John Alden Homes, Inc.[5] Mr. Kangas testified that he did not trace the Key Largo model onto the yellow sheet. Daugherty testified and demonstrated to the Court that when Ken Kangas' drawing on the yellow sheet of paper is placed on top of the Key Largo model, and then the yellow sheet is moved around to accommodate the change in the two bedrooms, it appears that the yellow sheet was traced from the Key Largo model. (tr. p. 130–5, Pl.Exh.5, 6) Although Mr. and Mrs. Kangas appeared to testify credibly as to their assertion that Mr. Kangas did not trace or copy the Key Largo model onto the yellow sheet of paper, the demonstration by Plaintiff of taking a transparency of the yellow sheet of paper and

placing it on top of the Key Largo model clearly showed that the yellow sheet of paper was in fact a tracing of the Key Largo model. The Court can accept no other explanation for the lines of both being so similar. Muth admitted that he received a copy of the yellow sheet of paper and therefore, he also had access to the traced plans of the Key Largo model.

■ The next issue that the Court must determine is whether the defendant's work is substantially similar to the plaintiff's protected expression. *Beal,* 20 F.3d at 459. The term "substantial similarity" has not been used with precision and has been defined as existing " 'where an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work.' " *Beal,* 20 F.3d at 459, ftnt. 4 (citations omitted), see also, *Leigh v. Warner Brothers, Inc.* 212 F.3d 1210, 1214 (11th Cir.2000) "An 'average lay observer' presumably is an individual who, without any vested interest in the governing issue, is sufficiently informed and alert to identify precisely the differences in the competing designs, yet sufficiently informed and independent to fairly identify and assess the similarities; that is, at a minimum, neither an engaged expert nor an oblivious passerby." *Arthur Rutenberg Homes, Inc. v. Maloney,* 891 F.Supp. 1560, 1567 (M.D.Fla.1995) In addition, no matter how the copying is proved, "the plaintiff also must establish specifically that the allegedly infringing work is substantially similar to the plaintiff's work with regard to its protected elements.' " *Leigh,* 212 F.3d at 1214. "Even in the rare case of a plaintiff with direct evidence that a defendant attempted to appropriate his original expression, there is no infringement unless the defendant succeeded to a meaningful de-

---

5. The promotional materials and marketing brochures are protected as well as the literal copyrighted plans. See, *Montgomery v. Noga,* 168 F.3d at 1292–93.

gree." *Id.* Further, the Court must consider the similarities between the designs as well as the dissimilarities. *Howard v. Sterchi,* 974 F.2d 1272, 1274–75 (11th Cir. 1992) The court can find that floor plans are visually similar with the same type of general layout yet find their dissimilarities significant. *Id.* at 1276. The Eleventh Circuit Court of Appeals upheld a District Court's determination that the variety of ways that a home can be divided into three bedrooms, two baths, a kitchen, a great room and porches is finite. *Id.* In architectural plans "modest dissimilarities are more significant than in other types of art works. *Id.* The Court also recognizes that a list of similarities is " 'inherently subjective and unreliable.' " *Beal,* 20 F.3d at 460

■ The Court carefully reviewed the testimony regarding the similarities and differences from the witnesses as well as the floor plans of the Key Largo (Pl.Exh.1, 5, 6), the derivative Key Largo floor plan (Pl.Exh.9), and Muth's Crown model (Pl. Exh.2) The Court notes that Muth's unrebutted testimony was that the Kangases' home had no significant structural changes from his Crown floor plan, therefore, the Court will compare the Crown floor plan to the Key Largo floor plan. In addition, the Court reviewed the yellow sheet of paper which provided a basic floor layout without any room dimensions or even any straight lines for walls. The Court finds that the yellow sheet of paper, the Crown and the derivative Key Largo (Pl.Exh.9) have the same layout in that the rooms are located in the same places. However, as the Eleventh Circuit has noted, there are only so many ways to place three bedroom, bathrooms, a laundry room, a living room, family room and kitchen.

The Crown and the derivative Key Largo model have the same number of rooms, however the room sizes in the two plans vary. In addition, the Crown's Master bath is not similar to the Key Largo in that the Crown's Master bath juts out at the front of the house to accommodate the bath tub. Further, the family room in the Crown also has a portion of the wall that juts out of the back of the house to accommodate a built in entertainment center. The walls of the Crown's master retreat are more angled than the study in the Key Largo. The Crown's bedroom nearest the foyer also juts out of the front wall whereas in the Key Largo, the third bedroom is even with the study wall. The master closet locations are different. The outer walls around the entertainment and dining room are square in the Crown and angled in the Key Largo. There are other similarities and differences too numerous for the Court to list. However, the Court does take note that none of the Key Largo drawings, including all of the derivatives, were able to be built on the Kangases' Lot 48 without modification due to the odd shape of the lot. The Court finds that the Crown plans and the Kangases home are not substantially similar to the Key Largo model plan or any derivative of the Key Largo model.

## IV. CONCLUSION

Because the Plaintiff has failed to establish by a preponderance of the evidence a copyright infringement by any defendant, the Clerk of the Court shall enter judgment in favor of Defendants, and the Plaintiff shall take nothing.