**DREAM CUSTOM HOMES, INC., Plaintiff,**

v.

**MODERN DAY CONSTRUCTION, INC., etc., et al., Defendants.**

**Case No. 8:08–CV–1189–T–17AEP.**

United States District Court, M.D. Florida, Tampa Division.

Feb. 22, 2011.

Debra Tuomey, Debra Tuomey, Attorney at Law, Spring Hill, FL, for Plaintiff.

Frank A. Miller, Joseph A. Lowman, Caglianone, Miller & Anthony, PA, George G. Angeliadis, The Hogan Law Firm, Brooksville, FL, J. Robert McCormack, Lewis, Brisbois, Bisgaard & Smith, LLP, Tampa, FL, for Defendants.

## ORDER

ELIZABETH A. KOVACHEVICH, District Judge.

This cause is before the Court on:

Dkt. 78 Motion for Summary Judgment

Dkt. 86 Notice of Filing—Deposition

Dkt. 87 Notice of Filing—Deposition

Dkt. 90 Motion for Summary Judgment

Dkt. 91 Notice—Judicial Notice

Dkt. 92 Response

Dkt. 93 Notice of Filing

Dkt. 94 Response—Judicial Notice

Dkt. 95 Motion for Leave to File Reply

Dkt. 96 Response

Dkt. 100 Response

Dkt. 101 Motion for Summary Judgment

Dkt. 102 Response

Dkt. 103 Request for Oral Argument

The Amended Complaint (Dkt. 33), filed on July 20, 2009, includes Plaintiff Dream Custom Homes, Inc.'s claim for copyright infringement. Plaintiff Dream Custom Homes, Inc. alleges that Defendants copied and/or distributed Plaintiff's Copyrighted Work, and reproduced and/or distributed Plaintiff's Copyrighted Work by creating derivative floor plans and elevations which infringe Plaintiff's Copyrighted Work. Plaintiff attached copies of four Certificates of Registration to the Amended Complaint: 1) Don Calais plans 2, Architectural or Technical Drawings, effective date of registration 9/7/2005; 2) Don Calais June, 2004, Architectural Work, effective date of registration 9/7/2005; 3) Don Calais plans 1, Architectural or Technical Drawings, effective date of registration 9/7/2005; and 4) Don Calais January 2002, Architectural Work, effective date of registration 9/7/2005. These collectively comprise the Copyrighted Work. Plaintiff has also attached a representative facsimile of the alleged Infringing Work, a six-page copy of plans and elevations prepared

by Defendant PAR Custom Drafting, dated 2/7/2008, for a residence for Defendant Anthony Piarulli to be constructed by Defendant Modern Day Construction, Inc. at 11188 Kiska Wren Rd., in Hernando County, Florida.

In Count I, Plaintiff Dream Custom Homes, Inc. alleges:

15. In or around the ending months of 2007 and/or the beginning months of 2008, Defendants copied and/or distributed Plaintiff's Copyrighted Work and reproduced and/or distributed Plaintiff's Copyrighted Work by creating derivative floor plans and elevations (hereinafter the "Infringing Work") which infringe Plaintiff's Copyrighted Work and the '600, '601, '602, and '603 registrations alleged above.....

18. Defendants, without right, license or authority, copied the Copyrighted Work in creating the Infringing Work, which was published and distributed by Defendants, and Defendant Modern Day Construction, Inc. is using the Infringing Work to construct a home for Defendant Anthony Piarrulli at 1118 Kiska Wren Road, Royal Highlands Unit 5, Block 302, Permit Number 1221036, Hernando County, Florida.

In the Amended Complaint, Plaintiff Dream Custom Homes, Inc. seeks entry of a temporary and final injunction, the seizure and impoundment of all copies made or used in violation of Plaintiff's copyrights, the award of actual damages and additional profits of Defendants, or the award of statutory damages resulting from Defendants' infringement of Plaintiff's Copyrighted Work, and the award of attorney's fees and costs. Plaintiff has requested a jury trial.

## I. Standard of Review

Summary judgment should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

"The plain language of Rule 56(c) mandates the entry of summary judgment after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."

Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The appropriate substantive law will guide the determination of which facts are material and which facts are ... irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. See Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir.1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." See Anderson, 477 U.S. at 248, 106 S.Ct. 2505. But, "[i]f the evidence is merely colorable ... or is not significantly probative ... summary judgment may be granted." Id. at 249–50, 106 S.Ct. 2505.

In Herzog v. Castle Rock Entertainment, Inc., 193 F.3d 1241, 1247 (11th Cir. 1999), the Eleventh Circuit Court of Appeals states:

Summary judgment historically has been withheld in copyright cases because courts have been reluctant to make subjective determinations regarding the similarity between two works. See, Hoehling v. Universal City Studios, Inc., 618 F.2d 972, 977 (2d Cir.) (citing Arnstein v. Porter, 154 F.2d 464, 474 (2d Cir.1946)). cert. denied, 449 U.S. 841,

101 S.Ct. 121, 66 L.Ed.2d 49 (1980). However, non-infringement may be determined as a matter of law on a motion for summary judgment, either because the similarity between two works concerns only non-copyrightable elements of the plaintiffs work, or because no reasonable jury, properly instructed, could find that the two works are substantially similar. *Beal v. Paramount Pictures Corp.*, 20 F.3d 454 (11th Cir. 1994). *cert. denied,* 513 U.S. 1062, 115 S.Ct. 675, 130 L.Ed.2d 607 (1994); *Warner Bros. Inc. v. Am. Broadcasting Cos.*, 720 F.2d 231, 240 (2d Cir.1983) (quoting *Hoehling,* 618 F.2d at 977) (emphasis in original) (citation omitted), *aff'd* 530 F.Supp. 1187 (S.D.N.Y.1982), *after remand,* 654 F.2d 204 (2d Cir.), *aff'g and remanding,* 523 F.Supp. 611 (S.D.N.Y. 1981).

The use of summary judgment has been approved in cases where: 1) because access has been established, the crucial issue is substantial similarity; 2) there may be substantial similarity with respect to the non-copyrightable elements of the two works compared; and 3) as to the protectable elements, there is substantial dissimilarity. *Oravec v. Sunny Isles Ventures, L.C.,* 527 F.3d 1218 (11th Cir.2008).

▇▇▇ Summary judgment is appropriate when the substantial similarity determination involves an architectural work that is merely a compilation of common design ideas. *Intervest Const., Inc. v. Canterbury Estate Homes, Inc.*, 554 F.3d 914, 919–20 (11th Cir.2008). The substantial similarity inquiry is "narrowed" when dealing with a compilation. *Key Publications, Inc. v. Chinatown Today Publ'g Enter., Inc.*, 945 F.2d 509, 514 (2d Cir.1991). When viewed through the lens of compilation analysis, only the original, and thus protected arrangement of spaces, elements and other staple building components should be compared. Intervest Construc-

tion at 919. In the case of architectural plans, "modest dissimilarities are more significant than they may be in other types of art works." *Howard v. Sterchi,* 974 F.2d 1272, 1276 (11th Cir.1992).

## II. Defendant's Motion for Summary Judgment

Defendant Modern Day Construction, Inc. seeks entry of summary judgment in favor of Defendant because, at the level of protected expression, the differences between the Don Calais plans and elevations and the Piarulli plans and elevations are so significant that no reasonable, properly instructed jury could find the works substantially similar. Defendant Modern Day Construction, Inc. requests that the Court find, as a matter of law, that the Don Calais plans 1 and Don Calais plans 2 are not substantially similar to the Piarulli plans.

Defendant Anthony Piarulli has filed a separate Motion for Summary Judgment (Dkt. 101) which seeks entry of summary judgment in favor of Defendant Piarulli on the same basis as the Motion for Summary Judgment of Defendant Modern Day Construction, Inc. Defendants PAR Custom Drafting, Inc. and Phillip Roush have filed a separate Motion for Summary Judgment (Dkt. 90) which seeks entry of summary judgment on the same basis as the Motion for Summary Judgment of Defendant Modern Day Construction, Inc. Any reference to Defendant Modern Day Construction, Inc.'s Motion for Summary Judgment also includes the Motions for Summary Judgment of the other Defendants.

▇▇▇ Substantial similarity to show that an original work has been copied is not the same as substantial similarity to prove infringement. Substantial similarity to prove infringement is a narrower inquiry than probative similarity, focused only on the elements of the copyrighted work

that are protectable and whether whatever copying took place appropriated those elements.

 Substantial similarity exists "where an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." *Leigh v. Warner Bros., Inc.,* 212 F.3d 1210, 1214 (11th Cir.2000). "An 'average lay observer' presumably is an individual who, without any vested interest in the governing issue, is sufficiently informed and alert to identify precisely the differences in the competing designs, yet sufficiently informed and independent to fairly identify and assess the similarities; that is, at a minimum, neither an engaged expert nor an oblivious passerby." *Arthur Rutenberg Homes, Inc. v. Maloney,* 891 F.Supp. 1560, 1567 (M.D.Fla.1995).

## III. Plaintiff's Response

Plaintiff responds that there are disputed issues of material fact which preclude the entry of summary judgment as to the validity of Plaintiff's copyright registrations, and Defendant Modern Day's infringement of those registrations. As to the architectural works Don Calais June 2004 and Don Calais January 2002 and the architectural drawings Don Calais plans 2 and Don Calais plans 1, Plaintiff asserts that the copyrighted works are strikingly similar in protectable expression to the Piarulli plans and elevations.

## IV. Statement of Facts

1. On August 29, 2005, Plaintiff Dream Custom Homes, Inc. submitted four applications for copyright registration: 1) Don Calais plans 2, Architectural or Technical Drawings; 2) Don Calais June, 2004, Architectural Work; 3) Don Calais plans 1, Architectural or Technical Drawings; and 4) Don Calais January, 2002, Architectural Work.

2. Don Calais plans 2 is registered as VA 1–311–600, and the effective date of registration is 9/7/2005. The registration indicates the date of first publication was 4/30/2004.

3. Don Calais June, 2004 is registered as VA–1–311–601, and the effective date of registration is 9/7/2005. The registration indicates the date of first publication was 4/30/2004.

4. Don Calais plans 1 is registered as VA–1–311–602, and the effective date of registration is 9/7/2005. The registration form indicates the date of first publication was 11/30/2001.

5. Don Calais January 2002 is registered as VA–1–311–603, and the effective date of registration is 9/7/2005. The registration form indicates the date of first publication was 11/30/2001.

6. Don Calais plans 2 is a reverse floor plan of Don Calais plans 1 (Dkt. 92–12, p. 1). For example, the Garage and Master Bedroom are on the left side on the Don Calais plans 1, but are on the right side of the Don Calais plans 2. In addition, there are minor variations between Don Calais plans 1 and Don Calais plans 2. In the Don Calais plans 1, there are three windows on the rear wall of the Master Bedroom; in the Don Calais plans 2, there is a sliding door to the Lanai, the angle on the outside corner is squared-off, and two windows are added on the long outside wall. The two single-hung windows at the rear of the Family Room in the Don Calais plans 1 are replaced by a single ellipse-top window in the Don Calais plans 2. In Bath 2, the ten-foot ceiling in the Don Calais plans 1 is replaced by an eight-foot ceiling in the Don Calais plans 2, and a window and plant shelf are added. In the Kitchen of the Don Calais plans 1, the dishwasher is at the end of the counter; in the Don Calais plans 2 the dishwasher is moved to next to the sink, and the sink is moved

over. Between Bedrooms 2 and 3, the "recessed arch" in the Don Calais plans 1 becomes "overhead niche" in the Don Calais plans 2, and an arch is added over the entrance.

7. Mr. Matt Burich, Vice President of Dream Custom Homes, Inc., testified that he and his brother jointly designed the Don Calais in 2001 on a personal computer, using "3–D Home Architect." (Dkt. 86–1, pp. 48–50). When Plaintiff was ready to build the house, the floor plan was printed and taken to a draftsman to make blueprints. (Dkt. 86–1, pp. 53–54). The design was created as a work-for-hire for Dream Custom Homes, Inc. Mr. Burich testified that, in addition to the floor plan, the original features of the Don Calais design include the front entry, with two columns on each side and a turret-style roof, the quoins placed at the edge of the walls which form the exterior angle of the wall, the placement of exterior lights, and the placement and shape of the windows, including the faux window and regular window in the shower. (Dkt. 86–1, pp. 65–86). Mr. Burich testified the roof was a hip roof because a hip roof is stronger for hurricanes. (Dkt. 86–1, p. 65).

8. Mr. Matt Burich testified that the Don Calais design was marketed by construction of a model home in 2001, by inclusion in the 2001 "Parade of Homes," a newspaper supplement which showcases new home designs of local builders, other newspaper advertising, and Plaintiff's website, which was created in 2003. (Dkt. 86–1, pp. 38–39). While Plaintiff has not provided any brochures from 2001/2002, in his Affidavit, Mr. Burich alleges that Plaintiff began publishing the Don Calais plans 1 and Don Calais plans 2 "architectural work/technical drawings" via brochures in 2001/2002 (Dkt. 92–6).

9. Mr. Burich testified that the Don Calais II was created in 2003. (Dkt. 86–1, p. 55). Mr. Burich testified that the differ-

ences between the Don Calais and the Don Calais II include: 1) no pool bath in Don Calais II; the bath is between the second and third bedrooms; 2) the 2 and ½ car garage in the Don Calais is a 2 car garage in the Don Calais II; 3) the dimensions are different; 4) the lanai is different. (Dkt. 86–1, pp. 56–58). Mr. Burich testified that the Don Calais is published on Plaintiff's website, but the Don Calais II has never been put on Plaintiff's website. (Dkt. 86–3, p. 20).

10. Mr. Matt Burich testified that he telephoned Defendant Anthony Piarulli and told him the plans for the Don Calais were copyrighted, and if Defendant Piarulli built Dream Custom Homes, Inc.'s house, there would probably be a problem. Mr. Burich further testified that he told Defendant Piarulli that Modern Day Construction, Inc. had been or was being sued for copyright infringement. (Dkt. 86–2, p. 39).

11. Mr. Matt Burich testified that the basis of Plaintiff's claim for knowing and intentional infringement on the Don Calais II copyright is that Defendant Piarulli came to Plaintiff's model home. (Dkt. 86–3, p. 22). Mr. Burich did not identify any facts supporting Plaintiff's claim that Defendant Modern Day Construction, Inc. had actual notice of Plaintiff's copyright. (Dkt. 86–3, pp. 21–22).

12. Dream Custom Homes, Inc. has built thirty-four Don Calais homes in Hernando County and Marion County, and one Don Calais II home. Seven Don Calais homes have been built in Citrus County. (Dkt. 87–3, p. 17).

13. In his deposition, Mr. Burich testified that the majority of the homes built by Plaintiff Dream Custom Homes, Inc. are homes that are generally based on Plaintiff's copyrighted plans, but which are modified in various ways to fit the needs of each purchaser, such as by adding a bed-

room or bathroom, or by bumping-out a wall. (Dkt. 87–1, pp. 11–14).

14. In 2005, Defendant Anthony Piarulli purchased the vacant lot on which Defendant Piarulli had his home built. Defendant Piarulli visited Plaintiff's model home center on at least two occasions, in December, 2006 and in January, 2008 (Dkt. 92–8). Defendant Piarulli testified that he visited two model homes constructed by Plaintiff, the Don Calais model at 8480 Spring Hill Drive, Spring Hill, FL, and the Don Calais model at 12377 Spring Hill Drive, Spring Hill, FL. Defendant Piarulli further testified that, by 2008, Defendant was more serious about having a home built. Defendant Piarulli testified that in 2008 he met with Plaintiff's employee, Tina Yuhasz, who provided some specific price information, what the price included and the costs for upgrades, but not a final price on the home Defendant proposed to build (Dkt. 92–7, p. 23). Defendant Piarulli also testified that Tina Yuhasz provided a contact person, Gina Hunt, for Defendant Piarulli to arrange financing.

15. Plaintiff Dream Custom Homes, Inc. has provided a "work-up" sheet on the home Plaintiff proposed to build for Defendant Piarulli, which includes specific price information, a specific design (Don Calais II), and a final proposed price of $170,034.00 (Dkt. 92–11). The work-up sheet indicates that the price does not include excavation or a well.

16. Defendant Anthony Piarulli testified that his best friend, Anthony Cresenzo, suggested that Defendant Piarulli contact Marc Delape, of Modern Day Construction, Inc., to build Defendant Piarulli's home. Defendant Piarulli testified that he met with Marc Delape at Mr. Delape's home on Shorecrest Court, and told Mr. Delape what Defendant Piarulli wanted in a home, which was similar to Mr. Delape's residence (Dkt. 92–7, p. 12), only on a smaller scale. Defendant Piarulli denied bringing any materials with him to the meeting with Mr. Delape. (Dkt. 92–7, p. 11). Defendant Piarulli testified that Mr. Delape showed Defendant floor plans for a home Mr. Delape had constructed on Flock Avenue, for Julian Norris. Defendant Piarulli testified that he discussed prices and financing with Mr. Delape (Dkt. 92–7, pp. 13–14). After Defendant Piarulli and Mr. Delape agreed on some changes to the Flock and Shorecrest designs, the proposed plans were sent to PAR Custom Drafting, Inc. for a final plan to be drafted (Dkt. 92–7, pp. 16–17). Defendant Piarulli testified that changes were made to the master bedroom, rear lanai, and room dimensions. Defendant Piarulli testified that he signed a contract with Modern Day Construction, Inc. on February 14, 2008, for a total price of $170,000, which included excavation and a well.

17. Defendant Anthony Piarulli denied that Defendant Piarulli showed Mr. Delape of Defendant Modern Day Construction, Inc. any floor plans or brochures from Plaintiff Dream Custom Homes, Inc., nor did Defendant Piarulli tell Mr. Delape that Defendant Piarulli had visited Dream Custom Homes, Inc. before meeting with Mr. Delape (Dkt. 92–7, p. 31).

18. In his deposition, Mr. Marc Delape, president of Defendant Modern Day Construction, Inc., denied that he ever visited any model constructed by Plaintiff Dream Custom Homes, Inc. Mr. Delape denied that he had any computer software for drafting plans (Dkt. 92–10, p. 28). Mr. Delape testified that he had plans for other houses that Mr. Delape had built on hand when he met with Defendant Piarulli (Dkt. 92–10, p. 30), and that changes were made to the plans to accommodate Defendant Piarulli's lot, then sent to PAR Custom Drafting, Inc. for a set of plans to be

made for the proposed Piarulli home (Dkt. 92–7, p. 33).

19. Defendant Phillip Roush, president of Defendant PAR Custom Drafting, Inc., has operated that business since 1996 (Dkt. 92–9, p. 7). Defendant Roush uses Auto CAD to draw plans (Dkt. 92–9, p. 13). Defendant Roush testified that he drafted plans for Mr. Marc Delape's home on Shorecrest from a hand sketch that Mr. Delape provided (Dkt. 92–9, p. 24). Defendant Roush testified that the plans for the Julian house on Flock Avenue were based on the plans for Mr. Delape's home on Shorecrest (Dkt. 92–9, p. 26). Defendant Roush testified that he has never been to Plaintiff's model center (Dkt. 92–9, p. 27). Defendant Roush testified that Mr. Delape brought him a plan from Mr. Delape's previous customer "Julian", which was marked with changes (Dkt. 92–9, p. 24), and Defendant Roush provided plans to Mr. Delape which incorporated the changes. Defendant Roush did not meet with Defendant Piarulli; any discussion Defendant Roush had as to the Piarulli plans was only with Mr. Marc Delape (Dkt. 92–9, p. 23).

20. In his Affidavit (Dkt. 92–6), Mr. Matt Burich states that Defendant Modern Day Construction, Inc.'s personal residence, 8420 Shorecrest Court, Spring Hill, FL, 34608, is approximately 1.21 miles from a model home constructed by Plaintiff in accordance with Don Calais June 2004 architectural work, located on Spring Hill Drive, Spring Hill, FL. Mr. Burich further states that Defendant PAR Custom Drafting, Inc.'s place of business, 12527 Spring Hill Dr., Spring Hill, FL, 34609 is approximately .38 miles from Plaintiff's model home center on Spring Hill Drive, Spring Hill, FL.

21. The plans for the Piarulli home are dated February 7, 2008.

22. Mr. Marc Delape obtained the permits to construct Defendant Anthony Piar-

ulli's home at 11188 Kiska Wren Rd. The home was constructed between May and September, 2008.

## V. Discussion

### A. Scope of Plaintiff's Claims

In the Complaint, Plaintiff alleges that Defendants copied and reproduced the Copyrighted Work by creating derivative floor plans and elevations which infringe the Copyrighted Work and Plaintiff's registrations.

The Copyright Act grants the copyright holder "exclusive" rights to use and authorize the use of his work in five qualified ways, namely, 1) to reproduce the work, 2) to prepare derivative works, 3) to distribute copies of the work to the public, 4) to perform the work publicly and 5) to display the work publicly. *Sony Corp. v. Universal City Studios, Inc.,* 464 U.S. 417, 432–33, 104 S.Ct. 774, 78 L.Ed.2d 574 (1984). *See* 17 U.S.C. Sec. 106 (six exclusive rights).

" 'Copying' is regularly used as a shorthand to refer to the infringement of a copyright holder's exclusive rights under a copyright." *Country Kids 'N City Slicks, Inc. v. Sheen,* 77 F.3d 1280, 1284 (10th Cir.1996). The "right to reproduce a copyrighted work" means the right to produce a material object in which the copyrighted work is duplicated, transcribed, imitated, or simulated in a fixed form from which it can be "perceived, reproduced or otherwise communicated either directly or with the aid of a machine or device." The right to prepare derivative works is broader than the right to reproduce a copyrighted work, in that reproduction requires fixation in copies, but the preparation of derivative works does not. *See House Report No. 94–1476,* Notes to 17 U.S.C. Sec. 106.

"To be an infringement, the "derivative work" must be "based on the copyrighted

work," and the definition in section 101 [17 U.S.C. Sec. 101] refers to "a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording art reproduction, abridgment, condensation, or any other form in which a work may be recast, transformed or adapted." To constitute a violation of Sec. 106(2), the infringing work must incorporate a portion of the copyrighted work in some form." *Id.*

Clause (3) of section 106 establishes the exclusive right of publication: The right to "distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease or lending." The copyright owner [has] the right to control the first public distribution of an authorized copy of [the] work, whether by sale, gift, loan, or some rental or lease arrangement. Any unauthorized public distribution of copies or phonorecords [of the copyrighted work] that were unlawfully made would be an infringement. *Id.*

**B. Direct Infringement**

██ Architectural drawings receive copyright protection under 17 U.S.C. Sec. 102(a)(5), pictorial, graphic and sculptural ("PGS") works, and Sec. 102(a)(8), architectural works. A PGS copyright does not protect against the construction of a building based on copyrighted plans, but prohibits only the copying of the plans themselves.

██ An "architectural work" under Sec. 102(a)(8) is "the design of a building as embodied in any tangible medium of expression, including a building, architectural plans or drawings. An architectural work includes the overall form as well as the arrangement and composition of spaces and elements in the design, but does not include individual standard features." "This definition reflects Congress's awareness that 'creativity in architecture fre-

quently takes the form of a selection, coordination, or arrangement of unprotectible elements into an original, protectible whole.' H.R.Rep. No. 101–735, as reprinted in 1990 U.S.C.C.A.N, at 69649. Thus, while individual standard features and architectural elements classifiable as ideas are not themselves copyrightable, an architect's original combination or arrangement of such features may be." *Oravec v. Sunny Isles Luxury Ventures, L.C.*, 527 F.3d 1218, 1225 (11th Cir.2008).

██ The definition of an architectural work closely parallels that of a compilation. *See Intervest Construction, Inc. v. Canterbury Estate Homes, Inc.*, 554 F.3d 914, 919 (11th Cir.2008); *The Harvester, Inc. v. Rule Joy Trammell + Rubio, LLC,* 716 F.Supp.2d 428, 438 (E.D.Va. 2010). The copyright in a compilation ... extends only to the material contributed by the author of the work, as distinguished from preexisting material employed in the work, and does not imply any exclusive right in the preexisting material. *See* 17 U.S.C. 103(b). Constraints on protectable expression in architectural works include the merger doctrine, market demands, building codes and zoning requirements, functional demands, the physical site and environment, budgetary constraints and available technology. *The Harvester, Inc.* at 440–441.

██ The protectable elements of architectural works include the shape, arrangement and location of buildings, the design of open space, the location of parking and sidewalks, and the combination of individual design elements. *John G. Danielson v. Winchester–Conant Props., Inc.,* 186 F.Supp.2d 1 (D.Mass.2002). Plaintiff's claim against Defendants is based on Defendants' alleged infringement of Plaintiff's copyrights in the Don Calais designs, which include the overall form, the arrangement of spaces and elements in the

design, along with Plaintiff's original combination of individual standard features, which together comprise a protectable whole.

To establish copyright infringement, "two elements must be proven: 1) ownership of a valid copyright; and 2) copying of constituent elements of the work that are original." *Feist Publications, Inc. v. Rural Telephone Service Co.,* 499 U.S. 340, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991). In order to establish that the allegedly derivative plans and elevations for the Piarulli home infringe Plaintiff's copyright in Plaintiff's "Don Calais" design, Plaintiff must prove that: 1) Plaintiff owns a valid copyright in the "Don Calais" designs; and 2) Defendants copied the original elements of the "Don Calais" designs in creating the plans and elevations for the Piarulli home.

A *prima facie* case of copying is established from a showing that a defendant had access to the copyrighted work and that substantial similarities exist between the original work and the infringing work. A defendant can then rebut the inference of copying by showing that its product was independently created despite its similarity to the plaintiff's work.

Once copying is established, a plaintiff must show that the copying amounts to an improper appropriation by demonstrating that substantial similarities relate to protectable material. Substantial similarity is determined from an "average lay observer's" point of view i.e. "where an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." *Original Appalachian Artworks, Inc. v. Toy Loft, Inc.,* 684 F.2d 821, 829 (11th Cir.1982).

"If the plaintiff does not have direct proof of copying, the plaintiff may show copying by demonstrating that the defendants had access to the copyrighted

work and that the works are 'substantially similar' ". *Herzog v. Castle Rock Entertainment, Inc.,* 193 F.3d 1241, 1248 (11th Cir.1999).

Defendants deny the actual copying of the Don Calais plans. There is no evidence which establishes that Defendant Piarulli obtained a copy of floor plans, drawings or brochures from Plaintiff and then gave the copies to Defendant Modern Day Construction, Inc. or Defendants PAR Custom Drafting, Inc. and Philip Roush. Since the Court has found no direct evidence in the record which establishes proof of copying, the Court will consider the issues of access and substantial similarity as circumstantial evidence of copying.

1. Validity of Copyright of Don Calais

An owner's cause of action for copyright infringement is unenforceable until compliance with the formalities of registration, including the payment of fees and deposit of copies of the work, is shown. Ownership of the copyright is demonstrated through compliance with the formalities of registration. *Donald Frederick Evans & Assoc., Inc. v. Continental Homes, Inc.,* 785 F.2d 897, 903 (11th Cir. 1986). The Copyright Act's registration requirement is a precondition to filing a copyright infringement claim that does not restrict a federal court's jurisdiction with respect to infringement suits involving unregistered works. *Reed Elsevier, Inc. v. Irvin Muchnick et al.,* 130 S.Ct. 1237 (2010).[1]

Defendants argue that the "Architectural Work" registrations are not valid because Plaintiff has not satisfied the deposit requirements of 37 C.F.R. Sec. 202.20(c)(2)(xviii)(B).

In cases where the registration is filed within five years of the first publication of the work, the certificate of registration may, without more, constitute *prima facie*

evidence of the validity of the copyright and of the facts stated in the certificate, 17 U.S.C. Sec. 410(c), including the requirements of originality and susceptibility to copyright under 17 U.S.C. Sec. 102(a).

Under 17 U.S.C. Sec. 410(c), it is within the Court's discretion to consider Plaintiff's certificates of registration as evidence that Plaintiff owns a valid copyright in the Don Calais January 2002 and Don Calais June 2004 Architectural Works, shifting the burden to Defendants to rebut the evidence. Plaintiff has provided documentation of Plaintiff's submissions to the U.S. Copyright Office (Dkts. 92–18, 92–19).

A party may overcome the presumption of validity by providing proof of deliberate misrepresentation. A material misstatement in a copyright registration application is one which goes toward the registrability of the materials, such as originality, the nature of the materials to be copyrighted, and contested claims of authorship and ownership.

Defendants argue that Plaintiff did not submit sufficient "identifying materials" with Plaintiff's architectural works registrations. The Court notes that, in the context of copyright, "originality" means only that the work was created independently (as opposed to copied from other works) and that it possesses some minimal degree of creativity. *Feist Publications v. Rural Telephone Service Co.*, 499 U.S. 340, 345, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991). The test of originality has a low threshold; an author must show that the author contributed something recognizably "his own." Novelty is not required. *Id.* at 358, 111 S.Ct. 1282.

Defendants have not offered any evidence which establishes factual inaccuracy in the applications, that any factual inaccuracy was willful and deliberate, and that the Copyright Office relied on the misrepresentation. The Copyright Office

has the expertise to determine whether a filer has complied with the technical requirements for registration. Because the evidence offered by Defendants does not rebut the presumption of validity of Plaintiff's certificates of registration, the Court exercises its discretion to rely on the certificates of registration to establish the validity of Plaintiff's copyrights.

### 2. Copying

#### a) Access

To demonstrate access, a plaintiff must show that the defendants had a reasonable opportunity to view or to copy his work. A mere possibility, speculation or conjecture about access does not satisfy this standard. Access may be inferred by: 1) evidence of review by a member of a work unit that includes one of the defendant-copiers; 2) evidence of possession by a third party who was an intermediary in a channel of communication between a plaintiff and one of the defendant-copiers; 3) evidence that the work was widely disseminated; and 4) evidence that the two works at issue are strikingly similar. *See* 3 *Nimmer on Copyright* Sec. 13.02[A] at 13–18–24.

The Court notes that Defendant Anthony Piarulli testified that Defendant Piarulli visited two model homes constructed by Plaintiff, then Defendant Piarulli met with Mr. Delape of Modern Day Construction, Inc., to whom Defendant Piarulli communicated the design Defendant Piarulli wanted. Mr. Delape of Modern Day Construction, Inc. arranged for Defendant PAR Custom Drafting, Inc, to prepare the Piarulli plans. The Court also notes that, for the purpose of its Motion for Summary Judgment only, Defendant Modern Day Construction, Inc. does not deny that Defendant Anthony Piarulli visited the Don Calais model prior to constructing Defendant Piarulli's home with Defendant Mod-

ern Day Construction, Inc. The Court also notes that, for purposes of their Motions for Summary Judgment only, Defendant Piarulli and Defendants PAR and Roush do not deny that they could have obtained access to Plaintiff's Don Calais Plans 1 and Don Calais plans 2 and/or the constructed Don Calais January, 2002 and Don Calais June 2004 through the U.S. Copyright Office, Plaintiff's website, visits to Plaintiff's model homes, or other possible avenues.

Plaintiff has argued that the copyrighted work was widely disseminated and that the infringing work is strikingly similar. Plaintiff argues that the Don Calais architectural works incorporate elements which are uniquely placed, are original to Plaintiff and are architecturally unnecessary; their exact duplication in Defendant's work shows indicia of copying.

The theory of widespread dissemination has more often been applied in the context of popular music broadcast on a national basis, or written works such as screenplays mailed to companies which produce movies, or books sold to the public. Plaintiff has built thirty-four Don Calais homes among the unknown thousands of homes in Hernando and Marion Counties. Plaintiff has advertised the Don Calais plans on its website and at the model homes. Plaintiff alleges that Marc Delape's home and the office of PAR Custom Drafting, Inc. are close (1.21 miles and .38 miles) to the Don Calais model home on Spring Hill Drive, Hernando County, FL. In spite of the proximity, the Court finds that the facts of this case do not lend themselves to the theory of widespread dissemination to establish access as a matter of law.

▮▮▮▮ To establish striking similarity, a plaintiff must show that the similarities between the copyrighted work and the allegedly infringing work are of a kind which cannot be accounted for by a theory of coincidence, independent creation, prior common source, or any theory other than copying. Plaintiff has alleged unique similarities, but has not established that only copying could produce those similarities. If both Plaintiff Dream Custom Homes, Inc. and Defendant Modern Day Construction, Inc., both home builders competing in the same market, created plans incorporating features from some other public source, then both could conceivably create plans containing the same unique similarities. The Court concludes that Plaintiff cannot establish copying without proof of access based on striking similarity.

▮▮▮ The Court will rely on the existence of a chain of events by which the alleged infringers gained access to the copyrighted work. After considering the undisputed facts, the Court finds that, for the purposes of the pending Motions for Summary Judgment only, Plaintiff has established that Defendant Piarulli had access to Plaintiff's Don Calais designs through Defendant Piarulli's visits to Plaintiff's model homes, that Defendant Modern Day Construction, Inc. had access through Defendant Piarulli's communication with Defendant Modern Day Construction, Inc., and that Defendants PAR Custom Drafting, Inc. and Phillip Roush had access through Defendant Modern Day Construction, Inc.'s communication with Defendants as to the Piarulli plans and elevations.

b) Substantial Similarity

In this case Defendant Modern Day Construction, Inc. argues that, at the level of protected expression, no reasonable, properly instructed jury could find that the Don Calais plans 1 and 2, and the Piarulli plans are substantially similar. Because Defendant seeks entry of summary judgment as a matter of law as to misappropriation, the Court will assume without deciding that Plaintiff can establish substantial similarity between the Piarulli plans and

the Don Calais plans 1 and 2 which, with proof of access, is sufficient to support the inference of copying. The Court will consider the issue of substantial similarity at the level of protected expression.

### 3. Misappropriation

In *Intervest Construction, Inc. v. Canterbury Estate Homes, Inc.*, 554 F.3d 914, 920–921 (11th Cir.2008), the Eleventh Circuit Court of Appeals notes that:

"when the crucial question in a dispute involving compilations is substantial similarity at the level of protectable expression, it is often more reliably and accurately resolved in a summary judgment proceeding. This is so because the judge is better able to separate original expression from the non-original elements of a work where the copying the latter is not protectable and the copying of the former is protectable.... Moreover, in examining compilations wherein only the arrangement and coordination of elements which by the nature of the work (here architectural floor plans) are sure to be common to each of the works and are not copyrightable themselves (spacial depictions of rooms, doors, windows, walls, etc.), the already difficult tasks may become even more nuanced. Because a judge will more readily understand that all copying is not infringement, particularly in the context of works that are compilations, the "substantial-similarity" test is more often correctly administered by a judge rather than a jury—even one provided proper instruction. The reason for this is plain—the ability to separate protectable expression from non-protectable expression is, in reality, a question of law, or, at the very least, a mixed question of law and fact."

The Court will consider the issue of substantial similarity as to the Don Calais plans 2. Since the Don Calais plans 1 is a mirror image of the Don Calais plans 2, with some minor differences, the analysis as to the Don Calais plans 2 will inform the analysis as to the Don Calais plans 1.

The Court notes that Plaintiff has identified some 87 points of similarity between the Don Calais plans 2 and the Piarulli plans. (See Dkt. 92–12, attached). The similarities include the layout of rooms, fixtures, windows, entrances and general shape. Plaintiff has argued that the overall arrangement of standard features, such as doors, windows and rooms, along with the original elevation, provide a look and feel of the Don Calais plans which distinguish it from other homes (Dkt. 92, p. 12). Plaintiff argues that the similarities between the Don Calais plans and the Piarulli plans are substantial and outweigh the trivial differences between the Don Calais plans and the Piarulli plans.

Defendants have identified the following dissimilarities (Dkt. 78, pp. 11–14):

| | PIARULLI HOME | DON CALAIS PLANS 2 |
|---|---|---|
| **Overall** | | |
| Living Space Sq. Ft. | 2,418 | 2,218 |
| Garage Sq. Ft. | 487 | 572 |
| Lanai Sq. Ft. | 317 | 296 |
| Entry | 100 | 94 |
| Total | 3,322 | 3,226 |
| Depth | 74' | 73'2″ |
| Front windows—top | eyebrow | ellipse |
| All windows | See elevations—many differences | |
| Roof lines | See elevations—many differences | |
| Plant Shelves | None | Living room, Kitchen, Master bath, Second bath, Lanai |
| **Garage** | | |
| Ceiling height | 10'4″ | 8'4″ |
| Dimensions | 22'4″ × 21'2″ | 25' × 21'6″ |
| Window Bump-out | 7'2″ wide, 4'6″ window | 7'4″ wide, 3' window |

| | | |
|---|---|---|
| Window Wall—Distance to overhead garage door | 2'1" | 1'2" |
| Garage Door | On outside wall, not facing front entryway | On outside wall facing front Entryway |
| Water Heater | On far side of garage from air conditioning unit | On near wall to air conditioning unit |

### Bedrooms 2 and 3

| | | |
|---|---|---|
| Width | Both 13'2" | One is 12', one is 12'5" |
| Ceiling height | Both 10' | Both 8' |
| Separation Between Rooms | Second bathroom | Closets |
| Separation From Bedroom Wing | Pocket door | No door and arch |
| Closets | Wall closets, Bifold doors | Walk-in closets, standard doors |

### Second Bathroom

| | | |
|---|---|---|
| Dimensions | 9'8" | 11' |
| Location | Between Bedrooms 2,3 | Next to Family Room with Door to Lanai |
| Door Width | 30" | 28" |
| Fixture | Shower | Bathtub |
| Linen Closet | None | Present |
| Sink | Oval | Round |

### Laundry Room

| | | |
|---|---|---|
| Dimensions | 14' × 6'5" | 11'6 × 5'11" |
| Closet Depth | 3' | 2' |
| Closet Doors | 1 Set bifold | 2 sets bifold |
| Location Washer/Dryer | Backs up to Dining Room | Backs up to Bedroom 2 |

### Kitchen

| | | |
|---|---|---|
| Dimensions | 14'10" × 11'4" | 14'10" × 12'6" |
| Countertop Lengths | 4'8", 3'5.5" × 3'6" on angle, 7'10", 9'2" | 3'1", 6'1" on the angle, 6'5" 8'4" |
| Dishwasher | On different leg of counter as sink | On same leg of counter as sink |
| Island bar | 9' | 11' |
| Island Counter | None facing Dining Room | Faces Dining Room |
| Pantry | 4' × 2'4" wide, single set bifold doors | 5'3" × 2'2", Two sets bifold doors |

### Nook

| | | |
|---|---|---|
| Windows | 3 panes, 4', 4'9 7/16", 4', each, Total 12'9 7/16" mitred glass | 2 panes, 5' Total 10' glass |
| Exit to Lanai | Outswing standard door to lanai next to Family Room | Sliding glass door on opposite end of wall next to Living Room |

### Study

| | | |
|---|---|---|
| Door | Angled entrance door | No study |
| Window | Allows light into house | Allows light into master closet |

### Entry

| | | |
|---|---|---|
| Dimensions | 7' × 4'8" | 6' 4" × 3'2" |
| Depth under roof | 10'2" | 8'11" |
| Ceiling height | 11'8" | 12' |
| Doors | 2 of 3' × 8' | 2 of 3' × 6'8" |
| Columns | Freestanding Front edge of base on same plane as front edge of entry | On attached house walls Front edge of of base at an angle to front edge of entry |

### Foyer

| | | |
|---|---|---|
| Ceiling height | 10'8" | 10' |

### Master Bedroom Suite

| | | |
|---|---|---|
| Door | Opens to entry to master suite, with bathroom to the left, hallway to bedroom to the right | Opens into master bedroom |
| Ceiling Height | 10' to 10'8" tray ceiling | 8' to 9' tray ceiling |
| Separation Bedroom/Bath | Hallway, 2 walk-in closets | Next to bath, with single walk-in closet accessible only from bathroom |
| Shape | Rectangular, with rectangular tray ceiling, French door access to lanai | Angled corner, angled tray ceiling with sliding door to lanai |
| Linen Closet | None | In master bath |
| Bathroom window | Turreted design with 3 "windows" | Rectangular "bump-out" with single window |
| Separation from Closet | Standard hinged door | Pocket door |

| | | |
|---|---|---|
| Toilet | In separate room with privacy door | Open stall |
| Sinks | Oval | Round |
| Bathtub detail | 2 columns and step | No columns, no step |
| Bath countertop | Angled finish | Square finish |
| *Living Room* | | |
| Length | 21'2" | 18'3" |
| Outside wall/door | 15'2" wide, 6' × 8' sliding glass door to lanai | 10'1" wide, 8' × 8' sliding glass door to lanai |
| Ceiling | 10' to 11' tray ceiling | No tray ceiling |
| *Family Room* | | |
| ·Dimension | 15'8" × 19'4" | 19'5" × 18' |
| Ceiling height | 10' to 10'8" tray ceiling | 8' to 10' tray ceiling |
| Window | Side of house, Bedrooms 2/3 | Back of house |
| Entertainment Center | None | Full wall built-in |
| Entry | 3' wide, flanked by 8" full-round columns with eyebrow detail | 7' wide, flanked by 10" half-round columns |
| *Lanai* | | |
| Overall shape | Dimensions/shape according to design | Dimensions/shape according to design |
| Columns | First column is on plane of outside wall of master bedroom then a 45 deg. angle to plane of outside wall of master bedroom. | Two and corner post on plane with outside wall of nook |

Defendants have identified the following differences in the elevations (Piarulli home vs. Don Calais June 2004) (Dkt. 78–6, p. 4, Dkt. 78–10, Dkt. 78–5, p. 4):

### Front elevations:

1. Door styles and sizes are different.
2. Window heights and widths are different.
3. Full-width "eyebrow" windows versus narrower "ellipse" window styles.
4. Master suite (left side of elevations) turret-style versus "bump-out" style with corresponding changes in roof design.
5. No quoins on Piarulli master bath versus quoins on Don Calais master bath.
6. Entrance pillar and under-eave soffit and fascia stylings are different.
7. Keystones over windows and doors smaller on Piarulli home.
8. Entryway height and widths are different.
9. Overall height of 23 feet versus overall height of 27 feet.

### Left elevations:

10. Roof lines different.
11. No garage door versus garage door.
12. Three windows versus two windows and two doors.

### Right elevations:

13. Roof lines are different.
14. Four windows versus two windows.
15. Garage door versus no garage door.
16. Window styles and sizes are different.

### Rear elevations:

17. Two windows and two doors versus seven windows and one door.
18. Kitchen window sizes different.
19. Roof line rises up severely beginning at nook over lanai and master suite (right side of elevation) versus continuing straight across.

Both floor plans are for a three-bedroom, two-bath, one-story split-plan concrete block home. Both floor plans include: a garage, a covered front entrance, a foyer, living room, dining room, nook, kitchen, laundry room, family room, master bedroom with access to master bath, two additional bedrooms, a second bathroom, closets and lanai. In both floor plans, the garage, laundry room, two bedrooms and family room are lined up on the right side, the master bedroom and master

bathroom are lined up on the left side, with the central living areas, (living room, dining room, kitchen and nook) separating the two bedroom areas. In both floor plans, the living areas are an open floor plan, without doors separating the dining room, living room, nook and kitchen. In both floor plans, the lanai is rear of the house, with access from the nook, living room and the master bedroom.

The floor plan of the Piarulli plans and the Don Calais plans 2 are visually similar in some respects, and the general layout is the same. However, there are dissimilarities which are significant. The second bathroom is in a different place. In the Piarulli home the second bathroom is between bedrooms 2 and 3, not next to the family room. The closets in bedrooms 2 and 3 differ in shape and size between the two floor plans. In the Piarulli home, there are two walk-in closets between the master bedroom and master bathroom and there is no access to a walk-in closet within the master bathroom; instead that space is a study with access from the living room. The lanai differs in placement, shape and size between the Piarulli home and the Don Calais plans 2. In the Piarulli home, the rear wall of the master suite and the lanai are a continuous line, so that the lanai is beside the master suite. In the Don Calais, the lanai is behind the master suite as well as next to it. The difference in the lanai further involves a difference in the rear roof lines. The dimensions of many rooms differ between the two plans. In the Piarulli home, the garage door is on the outside wall, so that the front lawn is much larger and includes a walkway to the front entrance, and there is no courtyard, giving a much different look to the Piarulli home compared to the Don Calais plans 2 when viewed from the exterior. These are only some of the dissimilarities between the floor plans; the Court finds that Defendant's identification of dissimilarities between the Piarulli home floor plan and

the Don Calais plans 2 is accurate and will not repeat every dissimilarity.

As to the four elevations which are part of the blueprints for the Piarulli home, and the four elevations for the Don Calais June 2004, the Court finds that Defendants' identification of the differences between the elevations is accurate, and is confirmed by the photographs attached to the Delape Affidavit.

■■■ Floor plans and construction drawings for single-family homes are capable of copyright protection. *John Alden Homes, Inc. v. Kangas,* 142 F.Supp.2d 1338, 1343 (M.D.Fla.2001); *Howard v. Sterchi,* 974 F.2d 1272 (11th Cir.1993). The Court understands that the Plaintiff's copyright includes the layout, overall shape, and the individual elements which together comprise the "Don Calais design." The Court has considered how the merger doctrine applies in this case. "The merger doctrine provides that 'expression is not protected in those instances where there is only one or so few ways of expressing an idea that protection of the expression would effectively accord protection to the idea itself.' " *BUC Intern. Corp. v. International Yacht Council, Ltd.,* 489 F.3d 1129 (11th Cir.2007). The Court notes that, in many cases in this Circuit, the similarity of floor plan has been discounted because there are a finite number of ways to design the floor plan for a three bedroom, two-bath split-plan home. *See Howard v. Sterchi,* 974 F.2d 1272 (11th Cir.1993); *Intervest Construction, Inc. v. Canterbury Estate Homes, Inc.,* 554 F.3d 914 (11th Cir.2008).

The Court notes that the traditional notion of a "custom home builder" is a builder who constructs a one-of-a-kind home designed for a specific client and for a particular location. Plaintiff Dream Custom Homes, Inc. is not a custom home builder in the traditional sense. Plaintiff

Dream Custom Homes, Inc. builds homes generally based on Plaintiff's copyrighted plans, but may modify the plans to meet the needs of the particular customer. A bedroom or bathroom may be added, or a wall "bumped-out"; otherwise the homes are constructed according to the plans selected from among the plans Plaintiff offers. (Dkt. 87–1, pp. 204–205). Plaintiff Dream Custom Homes, Inc. has constructed thirty-four homes according to the Don Calais design in Hernando and Marion counties (Dkt. 87–3, p. 17).

The Court recalls that the "originality" (elements selected and coordinated by the author, not copied from other sources) required to obtain a copyright has a low threshold. Mr. Matt Burich, one of designers of the Don Calais plans, is a general contractor, not an architect or professional home designer; the Don Calais plans were designed using an off-the-shelf software product. Plaintiff is a local home builder, i.e. Plaintiff is in the business of selling the homes Plaintiff builds only in certain Florida counties. The market in which Plaintiff operates shapes Plaintiff's designs in terms of the environment, and also in terms of what customers in that environment are looking for in a home. The Don Calais plans are designed for a mass market; they are not "one-of-a-kind" homes.

■■■■■■ Infringement is a question of fact. The Court notes that, even where copying is admitted, where the allegedly infringing design is not substantially similar to the copyrighted design in its protected elements, courts will not find infringement. *See Lifetime Homes, Inc. v. Walker Homes, Inc.,* 485 F.Supp.2d 1314 (M.D.Fla. 2007). The existence of differences between two designs will not negate infringement unless the differences so outweigh the similarities that the similarities can only be deemed inconsequential with the total context of the copyrighted work. *See*

*CSM Investors, Inc. v. Everest Dev., Ltd.,* 840 F.Supp. 1304, 1312 (D.Minn.1994).

■■■■ Plaintiff has identified certain features of the Don Calais plans 2 as distinctive, i.e. the front entrance, the quoins, the placement of the exterior lights, and the placement and shape of the windows. However, some of the features that Plaintiff has identified as distinctive are commonly found in other homes built in the same market. Defendants have provided photographs of other homes not constructed by Plaintiff that have a front entrance in the same general style as the front entrance of the Don Calais plans 2. As to the placement of exterior lights, where a home has a front window, the window will have space on either side where exterior lighting would logically be placed to light the front of the home. "In the realm of architecture, copyright does not protect utilitarian features or those which are dictated by external factors or mere functionality." *See Oravec v. Sunny Isles Luxury Ventures, LC,* 469 F.Supp.2d 1148, 1165 (S.D.Fla.2006) (citing *Sturdza v. United Arab Emirates,* 281 F.3d 1287, 1296 (D.C.Cir.2002)).

As to the other features Plaintiff has identified as distinctive, there are significant differences in those features between the Piarulli home and the Don Calais plans 2. The Piarulli home has quoins at the two corners of the front wall of the garage and a three-window arrangement on the master bath wall, without quoins. The windows of the Piarulli home are a different shape than the windows of the Don Calais. The Don Calais plans 2 shows quoins at two corners of the garage wall, and quoins marking the corners of the master bath wall which shows one window.

In *Cornerstone Home Builders, Inc. v. McAllister,* 303 F.Supp.2d 1317, 1320 (M.D.Fla.2004), after a bench trial, the Court found that McAllister had infringed

the distinctive "look and feel" of the St. Croix design copyrighted by Cornerstone Home Builders, Inc., noting the exterior elevation which showed a "unique two-story bay window tower." The Court found substantial similarity despite significant changes between the original and the infringing design, which included removing the lanai bathroom, reducing the three-car garage to a two-car garage, shortening the rear living-room wall to be even with the rear living-room wall, eliminating the front and upstairs balconies, and other changes. The Court noted that the McAllister home was in Apollo Beach, FL, a confined geographical area isolated from other residential neighborhoods by surrounding land use. *Cornerstone* at 1319. The factual situation in this case is significantly different from the factual situation in *Cornerstone Home Builders, supra.*

▪ After considering the "thin" protection accorded to compilations, the Court finds that, in this factual situation, the Don Calais plans are not sufficiently unique in design for an overall similarity in "look and feel" to outweigh the significant differences between the Piarulli plans and elevations and the Don Calais plans and elevations. *See Lifetime Homes, Inc. v. Walker Homes, Inc.,* 485 F.Supp.2d 1314, 1325 (M.D.Fla.2007). The Court therefore finds that the Piarulli plans and elevations are not substantially similar to the protectable elements of the Don Calais plans 2 and elevations. The average lay observer would not recognize the Piarulli plans and elevations to be misappropriated from the Don Calais plans 2 and elevations because of the many differences, and because the overall design is not sufficiently unique. The Court grants Defendant Modern Day Construction, Inc.'s Motion for Summary Judgment as to the Don Calais plans 2, and elevations.

Based on the above discussion, and because the Don Calais plans 1 are less similar to the Piarulli plans than the Don Calais plans 2, the Court grants Defendant's Motion for Summary Judgment as a matter of law as to the Don Calais plans 1, and elevations.

### 4. Reproduction

The Court has concluded that Defendants have not infringed Plaintiff's copyrighted designs because the allegedly Infringing Work is not substantially similar to the Copyrighted Work. Therefore, when Defendants created the Piarulli plans and elevations, as a matter of law, Defendants did not violate Plaintiff's exclusive right to reproduce Plaintiff's copyrighted designs.

### 5. Preparation of Derivative Work

▪ The Court notes that, in order to be considered a derivative work under 17 U.S.C. Sec. 103, the work must be recast, transformed or adapted from a pre-existing work. 17 U.S.C. 101. To be copyrightable as a derivative work, it must be substantially different from the pre-existing work. The original aspects of the derivative work must be more than trivial. *L. Batlin & Son v. Snyder,* 536 F.2d 486 (2d Cir.1976). The work must not consist of actual copying and must include more than mechanical copying. Fundamentally, the work must be the original product of the claimant. *Batlin, id.; Durham Industries v. Tomy Corporation,* 630 F.2d 905 (2d Cir.1980). The copyright claimant of the derivative work must have the consent of the holder of the copyright in the pre-existing work for the creation of the derivative work. *Gracen v. Bradford Exchange,* 698 F.2d 300 (7th Cir.1983). The creation of the derivative work may not be an infringement upon the pre-existing work from which it is derived. 17 U.S.C. Sec. 103. *Fred Riley Home Building Corp. v. Cosgrove,* 864 F.Supp. 1034 (D.Kan.1994).

Plaintiff's theory that Defendants violated Plaintiff's exclusive right to create a derivative work is conceptually at odds with Plaintiff's theory that Defendants infringed Plaintiff's copyright i.e. that Defendants copied and misappropriated the constituent elements of Plaintiff's designs which are original. Plaintiff argued that any differences between Defendants' design and Plaintiffs' designs were trivial. The Court found that the Copyrighted Work and the allegedly Infringing Work were not substantially similar. A derivative work is one which incorporates the original copyrighted work in some form, and yet which is substantially different from the original work. "If a secondary work sufficiently transforms the expression of the original work such that the two works cease to be substantially similar then the secondary work is not a derivative work, and, for that matter, does not infringe the copyright of the original work. *See* 1 *Nimmer* Sec. 3.01 at 3–3 (stating that "a work will be considered a derivative work only if it would be considered an infringing work" if it were unauthorized.)" *See Castle Rock Entertainment, Inc. v. Carol Pub. Group, Inc.*, 150 F.3d 132 (2d Cir.1998); *Well–Made Toy Mfg. Corp. v. Goffa Intern. Corp.*, 354 F.3d 112 (2d Cir. 2003), *abrogated on other grounds, Reed Elsevier v. Muchnick*, —— U.S. ——, 130 S.Ct. 1237, 176 L.Ed.2d 17 (2010). Therefore, the Court finds as a matter of law that the Defendants did not violate Plaintiff's exclusive right to prepare derivative works by preparing the Piarulli plans and elevations.

## C. Contributory Infringement

A contributory infringer is a party "who, with knowledge of the infringing activity, induces, causes, or materially contributes to the infringing conduct of another." *Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417, 104 S.Ct. 774, 78 L.Ed.2d 574 (1984).

In *Harvester, Inc. v. Rule Joy Trammell + Rubio, LLC*, 716 F.Supp.2d 428 (E.D.Va.2010), the Court notes:

While "[t]he Copyright Act does not expressly render anyone liable for infringement committed by another," the Supreme Court has explained that "[t]he absence of such express language in the copyright statute does not preclude the imposition of liability for copyright infringements on certain parties who have not themselves engaged in the infringing activity." *Sony, supra*, 464 U.S. at 434–35, 104 S.Ct. 774. In other words, though "[t]he human being who engages in reproduction, distribution, or other acts of 'copying' as defined by the Copyright Act is culpable as the direct infringer," courts also hold liable "[t]hose who participate in the copyright infringement ... even if they have not 'personally duplicated the designs' at issue." 3–12 Nimmer on Copyright § 12.04. A case is one "in which the imposition of vicarious [copyright] liability is manifestly just" when "the 'contributory' infringer was in a position to control the use of copyrighted works by others and had authorized the use without permission from the copyright owner." FN15 *Sony, supra*, 464 U.S. at 437, 104 S.Ct. 774.

## D. Vicarious Infringement

Traditional principles of vicarious liability apply in copyright infringement actions. A corporation may be liable for the infringing actions of corporate officers in the course and scope of corporate duties. *See Whelan Associates, Inc. v. Jaslow Dental Laboratory, Inc.*, 609 F.Supp. 1325 (E.D.Pa.1985). Vicarious liability extends to anyone with authority to control the infringing activities who also has a financial interest in the activities. *Warner Bros., Inc. v. Lobster Pot, Inc.*, 582 F.Supp. 478 (N.D.Ohio 1984). Corpo-

rate officers have been held personally liable for the infringing activities of the corporation. *See Famous Music Corp. v. Bay State Harness Horse Racing & Breeding Assoc.,* 423 F.Supp. 341 (D.Mass. 1976).

"The vicarious line of cases requires that the defendant: 1) possess 'the right and ability to supervise the infringing conduct' and 'have an obvious and direct financial interest in the exploitation of copyrighted materials.'"

The Court granted Defendants' Motions for Summary Judgment as matter law under the theory of direct infringement. To the extent that the allegations of the Complaint include any claim for contributory or vicarious infringement, Plaintiff's claim could not succeed for the same reason, the lack of substantial similarity at the level of protected expression. Accordingly, it is

**ORDERED** that Defendants' Motions for Summary Judgment are **granted** (Dkts. 78, 90, 101). The Motion for Leave to File to File Reply is **denied** as moot (Dkt. 95). The Request for Judicial Notice is **denied** as moot (Dkt. 91). The Clerk of Court shall enter a final judgment in favor of Defendants Modern Day Construction, Inc., Anthony Piarulli, PAR Custom Drafting, Inc. and Phillip Roush, and close this case.